566

JAMES E. BRIGGS v. CHICAGO GREAT WESTERN
RAILWAY COMPANY.[1]

February 11, 1955.

No. 36,421.

*Eugene A. Rerat, Harry H. Peterson,* and *Plunkett & Plunkett,*
for relator.

[1]Reported in 68 N. W. (2d) 870.

*Grannis & Grannis, Catherwood, Hughes & Alderson,* and *Glenn E. Kelly,* for respondent.

MATSON, JUSTICE.

Plaintiff seeks to review and vacate a nonappealable order by mandamus.

This matter arises pursuant to an order directing the trial court to show cause why a peremptory writ of mandamus should not issue commanding it to vacate an order granting a new trial, or in the alternative, if mandamus for that purpose is denied, requiring the trial court to vacate said order and to make a new order based exclusively on evidence presented to the jury.

Two trials have resulted in verdicts for the plaintiff and the granting of new trials. After the first trial, defendant appealed from an order denying its alternative motion for judgment or a new trial and this court reversed such order and granted a new trial.[2] Upon the second trial the verdict was set aside and a new trial granted on the ground that the verdict was not sustained by the evidence.

Plaintiff brought the action under the Federal Employers' Liability Act against the defendant to recover damages for personal injuries. Plaintiff claims that he was injured on June 20, 1948, while working as a locomotive fireman for the defendant at Oelwein, Iowa. He asserts that the sand pipe on the Diesel engine was bent when the engine moved over a broken rail in the course of switching operations. He alleges that the engineer directed him to pry the sand pipe away from the wheel of the engine with a crowbar. In prying the sand pipe away from the wheel, plaintiff had most of his body underneath the engine. Without giving any warning, the engineer is said to have released the air brakes. The noise of escaping air and the accompanying blowing of sand and dirt in his face frightened plaintiff because he interpreted it to mean that the engine was about to move. Plaintiff asserts that, in quickly trying to remove his body from underneath the engine, he struck his head against the engine's frame. He claims that striking his head on the frame caused condi-

---

[2]Briggs v. Chicago G. W. Ry. Co. 238 Minn. 472, 57 N. W. (2d) 572.

tions which finally resulted in total blindness. Defendant denies that the accident occurred and alleges that plaintiff's blindness was the result of neglected diabetes.

After the trial court had granted defendant's motion for a new trial on the ground that the verdict was not justified by the evidence, plaintiff moved to vacate the order granting a new trial. Plaintiff's motion was denied. In the memorandum attached to the order denying a vacation of the order granting a new trial, the trial judge stated:

"The Court in its memorandum to the order granting a new trial, among other things, stated 'on the motion the Court has had the benefit of briefs submitted by counsel, additional photographs supplied by counsel for the plaintiff, and the opportunity of inspection of several Diesel engines of the defendant, and of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, and consultation with employees of both companies relative to the mechanical operation of Diesel engines. *Of course, none of this is evidence in the case, but was simply for the purpose of better enabling the Court to understand the testimony in the case.'*

\* \* \* \* \*

"And, of course, the Court reiterates that it did not, ex parte or otherwise, obtain evidence outside of the record, that it used on the motion for a new trial."

The memorandum clearly reveals that the trial court, after the jury had brought in a verdict for the plaintiff, personally visited the railroad yard of the defendant and also the railroad yard of another railway company and inspected several Diesel locomotives and consulted with the employees of the defendant, and with employees of the other railway company, to obtain information on how the Diesel engines operated. It is clear that the trial court conducted such inspections and interviews without notifying or permitting the parties to accompany him.

Despite the assurance of the trial judge in his memorandum that he did not use as evidence any of the information obtained on his visit to the railroad yards and despite the fact that the memoran-

dum was not made a part of his order granting a new trial, plaintiff, confronted with a nonappealable order, seeks by mandamus to require the trial court to vacate its order *and then to consider the motion for a new trial without relying upon any evidence not presented to the jury.*

■ We need not explore all reasons why plaintiff's resort to mandamus must fail. It is enough to point out that mandamus will be denied where it is obvious that it will prove to be futile, unavailing, and ineffective.[3] Here the trial judge expressly denies that he ever considered the information secured outside the courtroom in deciding defendant's motion for a new trial. It would be futile and ridiculous to direct the judge to vacate his order granting a new trial and then to order him to reconsider the motion without relying upon information which he maintains he never considered originally.

■ There is another reason why this court cannot recognize mandamus as a remedy to review a trial court's discretion in granting a new trial. We have asserted that reason in denying certiorari as a remedy for that purpose. Salters v. Uhlir, 196 Minn. 541, 265 N. W. 333. A review by mandamus of a trial court's order granting a new trial cannot be resorted to any more than certiorari can be used to review such an order. Were we to hold otherwise, a party could accomplish indirectly by mandamus or certiorari that which he cannot accomplish directly by an appeal.[4] The legislature has authorized an appeal from an order granting a new trial only where the trial court expressly states that it was granted exclusively for errors of law occurring at the trial.[5] The appeals statute is not to be rendered nugatory by circumvention.

■ Although we must deny plaintiff the relief he seeks through mandamus, that denial is not to be considered as an approval of the trial court's action in inspecting Diesel engines in the railroad yards and in consulting with unsworn railroad employees about the opera-

[3]State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544; State ex rel. Lum v. Archibald, 43 Minn. 328, 333, 45 N. W. 606, 608.

[4]See, Asplund v. Brown, 203 Minn. 571, 282 N. W. 473.

[5]M. S. A. 605.09 (4) ; Thompson v. Mann, 202 Minn. 318, 278 N. W. 153.

tion of such engines. It is the general rule, even in the absence of specific statutory authority,[6] that a trial judge who is deciding the facts without a jury, may, in his discretion, view the premises or a chattel whenever such a view would be suitable for a jury[7] for the sole purpose of better understanding the evidence received during the trial but not for the purpose of obtaining additional evidence.[8] As a prerequisite, however, to an autoptic view, the judge, as a matter of judicial propriety, should notify the parties and give them an opportunity to be present.[9] In addition, a view of the premises or chattels should be accompanied by safeguards to insure (1) that the wrong objects are not viewed,[10] (2) that the conditions viewed are substantially the same as those existing at the time of the accident,[11] and (3) that no information will be obtained in violation of the hearsay rule from unsworn persons present at the view.[12] In the instant case we have the unique situation that the trial judge, without the knowledge of the parties, in passing upon a motion to set aside the jury's verdict as not being sustained by the evidence, *visited premises and inspected objects not involved in the trial and furthermore obtained explanatory information from unsworn persons.* If reasonable safeguards are observed, there is, of course, no reason why a trier of fact should not be permitted to inspect premises outside the courtroom as well as to view pictures of those premises

[6]53 Am. Jur., Trial, § 1128; 64 C. J., Trial, § 1005; see, Claesgens v. Animal Rescue League, Inc. 173 Minn. 61, 216 N. W. 535.

[7]See, 4 Wigmore, Evidence (3 ed.) § 1169.

[8]Claesgens v. Animal Rescue League, Inc. 173 Minn. 61, 216 N. W. 535; see, Ball v. Twin City Motor Bus Co. 225 Minn. 274, 30 N. W. (2d) 523, 9 A. L. R. (2d) 933.

[9]See, 4 Wigmore, Evidence (3 ed.) § 1169; 64 C. J., Trial, § 1007.

[10]See, 4 Wigmore, Evidence (3 ed.) § 1166; Pierce v. Brennan, 83 Minn. 422, 86 N. W. 417.

[11]See, Greenberg v. City of Waterbury, 117 Conn. 67, 167 A. 83; Empire Pipeline Co. v. Dowdy, 177 Okl. 386, 60 P. (2d) 757.

[12]See, 4 Wigmore, Evidence (3 ed.) § 1167: It is to be noted that sworn witnesses may deliver or repeat their testimony and point out the objects to which they refer. *Id.* § 1167. As to official "showers," see 4 Wigmore, Evidence (3 ed.) § 1167; 6 Wigmore, Evidence (3 ed.) § 1802.

during the trial. It is also not to be overlooked that not every unauthorized, improvident, or inadvertent viewing of the premises or chattel will be prejudicial.[13]

The order to show cause why a peremptory writ of mandamus should not issue is discharged.

Order to show cause discharged.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.

[13]Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733; 53 Am. Jur., Trial, § 897; 64 C. J., Trial, § 800.