# JAMES E. BRIGGS v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

80 N. W. (2d) 625.

January 11, 1957—No. 36,855.

420

*Grannis & Grannis* and *Catherwood, Hughes & Alderson,* for appellant.

*Eugene A. Rerat, Plunkett & Plunkett,* and *Bonner & Clements,* for respondent.

MATSON, JUDGE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

This action, now before this court for the third time,[1] was brought under the Federal Employers' Liability Act (45 USCA, §§ 51 to 60) for damages for injuries claimed by the plaintiff to have been caused by the defendant's negligence while he was in its employ.

Aside from the question of whether the evidence sustains the verdict as to how the accident happened and as to the cause of plain-

---

[1]Briggs v. Chicago G. W. Ry. Co. 238 Minn. 472, 57 N. W. (2d) 572; Id. 243 Minn. 566, 68 N. W. (2d) 870.

tiff's blindness, we have issues as to: (1) Whether the court erred in failing to strike the case from the calendar for failure to file a note of issue, (2) misconduct of a juror in taking an unauthorized view of the engine, (3) alleged error in ruling upon the admissibility of medical testimony and upon the admissibility of other evidence, (4) failure of the court to instruct the jury that any amount recovered by the plaintiff was exempt from Federal income taxes, and (5) whether alleged misconduct of the counsel was prejudicial.

Taking the evidence in the light most favorable to the verdict, it appears that the accident occurred on June 20, 1948, while plaintiff was working as the fireman on a switching crew in the Oelwein, Iowa, yard. During the switching operation, the Diesel engine hit a broken rail which wedged the sandpipe on the engine down under the wheel of the engine. The plaintiff claims that he was ordered by the engineer to crawl under the engine and attempt to pry the sandpipe away with a crowbar. While under the engine, the airbrakes were suddenly released blowing dust and dirt into plaintiff's eyes. Because the plaintiff thought the sudden release of the brakes meant that the engine was going to move with him underneath, he became frightened and jerked back in a frantic effort to get out. In doing so, he struck the base of his skull against the frame and steps, twisted his neck, and hit the side of his head. Plaintiff was stunned, but managed to crawl out. He asserts that the engineer, who was in charge of the engine crew, was aware of the injury. After finishing the remainder of the shift, plaintiff returned home. His eyes, however, continued to be painful and blurry, his neck ached, and he was emotionally upset. Plaintiff's testimony as to the occurrence and the circumstances of the accident was corroborated by two other members of the switching crew.

Defendant denies that plaintiff was injured as alleged or that there was a broken rail. Defendant also contends that it received no notice of any accident involving the plaintiff until May 10, 1950, about 23 months afterward, when it was served with a summons and complaint in this action. The engineer denied that any such incident as the broken rail had occurred and denied that he had

ever ordered the plaintiff to go under the locomotive. He could not recall that plaintiff had been injured at any time while he was working with him as a fireman. He admitted, however, that he had signed a statement for the plaintiff that he remembered encountering a broken rail on June 20, 1948. Another member of the switching crew said he could not recall that such an accident had happened. The roadmaster at the Oelwein yards testified he had no record of any repairs being made during the month of June 1948 on the track alleged to have a broken rail. There was also a sharp conflict in the evidence as to whether it was physically possible for the plaintiff to use a crowbar in the position he allegedly occupied under the locomotive.

It was for the jury to resolve the conflict in evidence. We cannot say that the evidence adduced by the plaintiff as to how the accident happened is so improbable that it does not sustain the jury's verdict.

Does the evidence support the verdict that plaintiff's blindness was proximately caused by the injuries sustained when he struck the base of skull, twisted his neck, and bumped the side of his head in trying to get out from under the locomotive? Defendant asserts that any injuries he sustained contributed nothing to his blindness and that such blindness was caused solely by a longstanding and neglected case of diabetes which went out of control and finally developed into diabetic retinitis (diabetic retinopathy). No useful purpose will be served by reviewing in detail plaintiff's testimony that after the accident his eyes became painful and his vision became blurry and steamy as if he were looking through a cloud. Neither is it necessary to give a detailed analysis of the voluminous and conflicting medical testimony. The question simply is—does that testimony sustain the verdict.

Medical opinion, adduced in behalf of the plaintiff, was substantially to the effect that the trauma from the accident was a direct cause of glaucoma and that the resulting glaucoma was the trigger which upset the diabetic balance and caused it to go out of control. One of these medical experts said the acute glaucoma in the left eye exerted pressure on the optic nerve and caused an atrophy of the

optic nerve and loss of sight. He said the diabetic condition aggravated the injury and was a factor in the disorganization and degeneration of the retina. Although glaucoma in the right eye appeared to clear up about ten days after the accident, there was hemorrhaging of the blood vessels of the right eye and the blood went into the retina. In healing, the injured parts formed bands of scar tissue attached to the retina and these bands by their contracting effect pulled the retina loose from the back of the eye, which caused the loss of sight.

Another medical witness testified that the combination of circumstances, the rise in blood pressure (from emotional upset), the blow to the orbit and the socket of the orbit, plus the thickening of the iris (resulting from plaintiff's being a diabetic), all combined to close the drainage of the fluid from the eyeball and this caused the acute glaucoma. This increase in pressure in the eyeball squeezed the media and optic nerve so that the nerve tracks were destroyed and blindness resulted. With respect to the right eye, the doctor said the blood vessels were especially vulnerable to injury because of diabetes; the blood vessels were fragile because of diabetic retinopathy. The blow to the head, he said, caused these vessels to hemorrhage and the scar tissue resulting from the healing process contracted and detached the retina from the back of the eye. There was further testimony that a severe emotional upset can cause glaucoma.

Defendant's medical experts gave forceful and persuasive testimony supporting the contention that the injuries had nothing to do with the accident. Although there is much in the medical testimony, and in the plaintiff's medical history, to support a contrary finding, we cannot say that the jury's verdict in favor of the plaintiff as to the cause of his blindness is not sustained by the evidence as a whole. We so hold.

■ We find no error in the trial court's refusal to strike the case from the calendar for plaintiff's failure to serve or file a note of

issue.[2] Pursuant to Rule 6.02 of Rules of Civil Procedure, which permits a trial court in its discretion to enlarge the period in which certain acts must be done, the trial judge granted plaintiff's motion for an extension of time in which to file a note of issue. We need not determine whether Rule 6.02 permits an extension of the time in which to file a note of issue since the defendant waived its objection to the jurisdiction of the court by filing an affidavit of prejudice against the judge to whom the case had been assigned. The filing of an affidavit of prejudice against a judge to whom a case has been assigned is a waiver of any objection to the jurisdiction of the court.

■ The trial court erred in permitting, over defendant's objection, plaintiff's witness Dr. Nathan Harvey Camm, an optometrist, to answer the following question: "* * * Doctor, I will ask you if from reviewing these records [the records consisted of a report prepared by another optometrist who, prior to the accident, had prescribed glasses for the plaintiff] that I am holding in my hand, whether or not you made a search of those records to determine whether or not any place in those records *there is any evidence of what is called diabetic retinitis*?" (Italics supplied.) Answer: "I found no signs of diabetic retinitis." Although a qualified expert witness may properly be permitted to explain the meaning of technical language or terms found in records which are in evidence,[3] the majority rule which prevails in this jurisdiction does not permit an expert witness to base his opinion upon the opinion of another expert witness,[4] or upon the observations of fact reported by another expert witness, unless such observed facts are included in an

---

[2]"* * * If no statutory notice of trial is given, the other litigant is entitled to have the verdict set aside and a new trial granted *regardless of whether prejudice has resulted or not* * * *." Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 480, 43 N. W. (2d) 807, 814.

[3]In re Estate of Scanlan, 246 Iowa 52, 55, 67 N. W. (2d) 5, 7.

[4]Hohenstein v. Dodds, 215 Minn. 348, 10 N. W. (2d) 236; Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 118 N. W. 256.

hypothesis to be supported by other evidence as to their truth.[5] In the instant case, plaintiff's question did not call for a mere definition of technical terms or language but for an expert opinion as to whether the facts reported by another optometrist were evidence of, or indicated the presence of, diabetic retinitis. Since error occurred for the reason above stated, it is unnecessary to consider the further question whether Dr. Camm was qualified to give an expert opinion as to the presence or absence of diabetic retinitis. We conclude, however, that the erroneous admission of Dr. Camm's testimony was not prejudicial since the subject of diabetic retinitis was fully explored and presented pro and con by an imposing array of other expert witnesses. In the light of the overall medical and other testimony, his opinion, despite plaintiff's improper reference thereto in the argument to the jury, could not reasonably have had such persuasive weight as to be prejudicial.

■ Although it is misconduct for jurors to take an unauthorized view of the scene of an accident, or of an instrumentality involved in an accident, a new trial should not be granted for such misconduct if the trial court is reasonably certain that no prejudice resulted, and the duty of determining whether such misconduct was prejudicial, like other questions of fact, rests primarily upon the trial court and its decision thereon will be reversed only for an abuse of discretion.[6] If, however, it is not reasonably certain that no prejudice resulted, a new trial should be granted. Clearly, not every unauthorized view of the locus in quo requires the setting aside of a verdict.[7] We find no abuse of discretion here since it appears from the record that the juror had only a casual and momentary look at the engine before she was warned away by a watchman.

[5] In re Estate of Scanlan, *supra;* Ipsen v. Ruess, 239 Iowa 1376, 1388, 35 N. W. (2d) 82, 91; McCormick, Evidence, § 15. The basis for the rule is that, since the question is not hypothetical in form, the jury is asked to accept as evidence the witness's inference, based upon someone else's hearsay assertion of a fact which is, presumably, not supported by any evidence at the trial and which therefore the jury has no basis for finding to be true.

[6] Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716.

[7] Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733.

Furthermore, it is difficult to understand how any prejudice could have resulted in view of the fact that the evidence presented to the jury included a 14-foot enlarged picture of the rear portion of the engine.[8]

■ It was not error to permit the reading into evidence of the testimony of two of plaintiff's nonresident witnesses who testified at the first trial of this action. In a civil action, the testimony at a former trial of a nonresident[9] witness, who is not within the jurisdiction of the court, is admissible in a pending trial when it appears that the party against whom the testimony is offered (or a party with substantially the same interests as to motive with respect to the outcome of the litigation[10]) had on the former trial an adequate opportunity by cross-examination to sift the testimony and when it further appears that such testimony at the former trial pertained substantially to the same issues as those to which it is applicable in the pending trial.[11] Since the evidence sustains the finding that plaintiff's aforesaid two witnesses were nonresidents and not within the jurisdiction of the court, and further that their testimony at the former trial and in the pending case applied substantially to the same issues, the trial court did not abuse its discretion in admitting such testimony.

■ In refutation of plaintiff's testimony that he had crawled under the engine to pry away the sandpipe with a crowbar, defendant called an engineer who assumed the same position testified to by plaintiff

[8]See Newton v. Minneapolis St. Ry. Co. 186 Minn. 439, 449, 243 N. W. 684, 688, wherein this court said: "Mere viewing of the locus in quo, depicted by drawings and photographs before the jury, could hardly prejudice plaintiff, * * *."

[9]Finnes v. Selover, Bates & Co. 114 Minn. 339, 131 N. W. 371.

[10]Cox v. Selover, 171 Minn. 216, 213 N. W. 902. "Thus in a recent leading Missouri case, testimony taken in a previous suit by the husband for loss of services of the wife resulting from an injury, was admitted against the wife who sued in a separate action for her own injury from the same accident." McCormick, Evidence, § 232, p. 489.

[11]See, 7 Dunnell, Dig. (3 ed.) §§ 3306a and 3307; McCormick, Evidence, §§ 230 to 238; Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co. 51 Minn. 304, 314, 315, 53 N. W. 639, 642.

and made measurements to show that it was physically impossible for plaintiff to reach the crowbar when in such a position under the engine. In rebuttal of the defense of physical impossibility, plaintiff was permitted to introduce the testimony of one Burton A. Hudson who said that he had actually assumed under the engine the position described by Briggs and that in that position he was able to reach the crowbar. After defendant's expert witness introduced the evidentiary element of physical impossibility, it was not an abuse of discretion for the trial court to permit plaintiff to present rebuttal testimony. What is proper rebuttal evidence rests almost wholly in the discretion of the trial court.[12]

■ Defendant predicates further error on the denial of its motion for a new trial on the ground that the aforesaid witness, Burton A. Hudson, in a supporting affidavit admitted that he had not actually assumed under the engine the position testified to by plaintiff, and that when he did so he could not reach the crowbar. The new evidence presented by his affidavit merely impeached the testimony which he and the plaintiff had theretofore given. In the light of the testimony given by the various witnesses, it was not an abuse of discretion to deny defendant's motion. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court; and, if such evidence is merely cumulative, contradictory, or impeaching of evidence adduced during the trial, a denial of a new trial is not an abuse of discretion. Skog v. Pomush, 219 Minn. 322, 17 N. W. (2d) 641.

■ Did the plaintiff by his testimony impliedly waive the physician-patient privilege accorded to him under M. S. A. 595.02(4)? During direct examination he testified that, as a personal patient, he had on August 9, 1948, consulted Dr. Garfield M. Thein, one of defendant's company doctors. Upon cross-examination he admitted that he had not told Dr. Thein of his accidental injury and that Dr. Thein had made some reference to the presence of diabetes retinitis. Subsequent to such cross-examination, plaintiff's counsel included, in a hypothetical question directed to Dr. Cavanor, an

[12] 19 Dunnell, Dig. (3 ed.) § 9715; 53 Am. Jur., Trial, § 120.

assumption of fact that plaintiff had consulted Dr. Thein who had made some mention of diabetes retinitis in the right eye and had told plaintiff he had glaucoma in the left eye. Another physician, Dr. Korchik, testifying for the plaintiff, admitted on cross-examination that he based his opinion in part upon Dr. Thein's reported finding of glaucoma and his reference to diabetes retinitis. It is to be noted that plaintiff on direct examination carefully avoided testifying as to any communications with Dr. Thein and that only upon cross-examination did he admit that the doctor had told him of the presence of diabetes retinitis. Plaintiff's direct testimony provided no basis for a finding of a waiver. Since a waiver must be voluntary, his testimony upon cross-examination is not controlling. It is the general rule that testimony elicited by cross-examination of a patient as to communications with his physician is not voluntary and therefore does not constitute a waiver of the physician-patient privilege.[13] After plaintiff had once through cross-examination involuntarily testified in substantial part as to the results of Dr. Thein's examination, the purpose thereof was properly included in the hypothetical questions directed to other expert medical witnesses and such inclusion by plaintiff's counsel did not constitute a waiver of the privilege.

Defendant contends that it was error to permit plaintiff's expert medical witnesses to testify upon the basis of the hypothetical questions put to them on the ground that these questions omitted certain facts and included others not in evidence. First, we have the assertion that the hypothetical questions were erroneous in using the word *temple* to indicate the location of the blow when the plaintiff had testified to a blow to the base of the skull and *to the side of his head,* and in using the word *dazed* instead of the word *stunned.* No one can seriously contend that the foregoing inaccuracies were prejudicial. The assumed fact that plaintiff had glaucoma in both eyes is supported by the evidence since, although plaintiff did not testify that he had glaucoma, he did relate symptoms which subsequent medical testimony established to be indicative of glaucoma in

[13]58 Am. Jur., Witnesses, § 452; Annotation, 114 A. L. R. 798, 806; see, Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185, 47 A. L. R. (2d) 733.

both (temporarily in the right) eyes. Furthermore, the assumption that plaintiff had a very severe fright and emotional upset which lasted for weeks after the alleged accident is supported by plaintiff's testimony that he was emotionally upset for many weeks. The omission from the hypothetical question of plaintiff's failure to report the accident to anyone for 23 months is of too little medical significance to have been prejudicial.

Alleged errors in the hypothetical question, of the nature above cited, would never be raised on appeal if it were kept in mind that, although a hypothetical question should embody substantially all the facts supported by competent evidence, minor inaccuracies will be overlooked, especially when the context indicates that the jury did not receive an erroneous picture.[14] Long ago this court pointed out that the technical rules as to hypothetical questions are relaxing[15] and this is a step in the right direction. Although the hypothetical question must embody substantially all admitted or undisputed facts relating to the ultimate issue, and should also include facts which the jury might reasonably find to be true,[16] it does not follow that the failure to include all pertinent or material facts is a basis for a reversal as long as the jury was not misled to the prejudice of the adverse party.[17] Whether a hypothetical question presents an adequate foundation for an expert opinion rests largely in the discretion of the trial court and its decision will not be reversed except for a clear abuse of that discretion. Although the burden of framing an adequate hypothetical question rests upon the propounder and he may not cast the burden of supplying its deficiencies upon opposing counsel,[18] nevertheless, in passing upon the question of whether prejudicial error occurred, it is not to be overlooked that an adversary enjoys certain safeguards in that he may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them. A further safeguard exists in the right

[14]Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27.

[15]Robbins v. M. B. Hubbard Grocery Co. 163 Minn. 247, 203 N. W. 783.

[16]Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22.

[17]See, Aasen v. Aasen, *supra;* McCormick, Evidence, § 14, p. 32.

[18]7 Dunnell, Dig. (3 ed.) § 3337.

of the trial judge, if he deems the original question unfair, to require at his discretion that the hypothesis be reframed to supply an adequate basis for a helpful answer.[19]

We decline to consider the alleged error based upon the assumption of fact that plaintiff had exhibited no ordinary symptoms of diabetes, such as frequent urination or excessive appetite, before the accident. The record shows that defendant's counsel withdrew all objection to the hypothetical question on this ground.

■ One of defendant's medical witnesses upon cross-examination declared: "My interest in the case is so great that I feel nobody should be cheated out of money that doesn't rightfully be theirs or I mean should be cheated out of money." This, and other passages of his testimony of similar tenor, were stricken by the trial court. Portions of an expert witness's testimony which are inflammatory and likely to engender bias may properly be stricken by the trial court.

■ Upon cross-examination, plaintiff's medical witness, Dr. Korchik, admitted that in a written report previously made to plaintiff's former counsel he had made certain statements which were inconsistent with his present testimony. After such admission the trial court properly excluded the written report from the evidence. Once a witness has unequivocally admitted having previously made inconsistent statements in a written report, the written report becomes inadmissible since proof of the inconsistency is no longer necessary or material.[20]

■ The trial court properly denied defendant's request that the jury be instructed that any recovery by the plaintiff was exempt from Federal income taxes. We do not concur in the holding of Dempsey v. Thompson, 363 Mo. 339, 251 S. W. (2d) 42, wherein the Missouri court held it proper to instruct the jury that any award of damages is not subject to Federal income taxes and that such taxes

---

[19]McCormick, Evidence, § 14.

[20]See, Price v. Grieger, 244 Minn. 466, 472, 70 N. W. (2d) 421, 425, and cases and authorities therein cited; 58 Am. Jur., Witnesses, § 780; 70 C. J., Witnesses, § 1298; McCormick, Evidence, §§ 28, 37; Babbitt v. Say, 120 Ohio St. 177, 165 N. E. 721.

should not be considered in fixing the amount of damages. The majority rule is to the contrary and we adopt it as more in accord with sound judicial administration. The injection of the question of income tax liability is likely to give rise to more problems than it would solve.[21] In rejecting the rule of the Dempsey case, *supra,* the Illinois Supreme Court in Hall v. Chicago & N. W. Ry. Co. 5 Ill. (2d) 135, 151, 125 N. E. (2d) 77, 86, appropriately said:

"It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tortfeasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.

\* \* \* \* \*

"We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation."

The fallacy of the contention that, if the instruction is not given, the jury is likely to enhance the award by including an amount for income taxes, is based on the unjustified assumption:

"\* \* \* that the jury will not confine itself to the evidence nor the court's charge but will consider and take into account matters not mentioned therein. This is to assume that there will be misconduct on the part of the jury, an assumption in which we cannot indulge." Missouri-Kansas-Texas R. Co. v. McFerrin (Tex. Civ. App.) 279 S. W.

---

[21]Combs v. Chicago, St. P. M. & O. Ry. Co. (N. D. Iowa) 135 F. Supp. 750; Maus v. New York, C. & St. L. R. Co. (Ohio App.) 128 N. E. (2d) 166, affirmed, 165 Ohio St. 281, 135 N. E. (2d) 253.

432

(2d) 410, 419, reversed on other grounds, 156 Tex. ——, 291 S. W. (2d) 931.[22]

We hold, in accord with the majority rule,[23] that in a personal injury suit the incidence of Federal income taxation is not a proper factor to be considered by the jury in making an award of damages and that it is therefore improper to instruct the jury that an award for damages for impairment of earning capacity, whether past or future, is exempt from such taxation.

In the course of his argument to the jury, plaintiff's counsel used a ruler on the enlarged photograph of the locomotive to establish certain engine measurements. Patently measurements so taken were inaccurate and improper since the photograph could not possibly reflect the three-dimensional shape and size of the engine. It was, however, for the trial court, with the advantage of its direct observation of the measuring act and of its impact upon the jury, to ascertain in its discretion whether counsel's conduct was so prejudicial as to mislead the jurors. The same principle applies to other acts of alleged misconduct. The honesty which qualifies a man to be a lawyer wholly disqualifies him from basing any of his arguments to the jury on deliberate appeals to passion and prejudice. We have repeatedly said that a lawyer may strike hard blows, but we have never condoned foul blows. Lest a lawsuit become a travesty and not an adjudication of disputed facts under the law, any deliberate or intentional resort to pure bias as an instrument of persuasion before the jury not only justifies but requires corrective action by

[22]Quoted with approval in Combs v. Chicago, St. P. M. & O. Ry. Co. (N. D. Iowa) 135 F. Supp. 750.

[23]See, Maus v. New York, C. & St. L. R. Co. (Ohio App.) 128 N. E. (2d) 166, affirmed, 165 Ohio St. 281, 135 N. E. (2d) 253; Hall v. Chicago & N. W. Ry. Co. 5 Ill. (2d) 135, 125 N. E. (2d) 77; Missouri-Kansas-Texas R. Co. v. McFerrin (Tex. Civ. App.) 279 S. W. (2d) 410, reversed on other grounds, 156 Tex. ——, 291 S. W. (2d) 931; Combs v. Chicago, St. P. M. & O. Ry. Co. (N. D. Iowa) 135 F. Supp. 750; Stokes v. United States (2 Cir.) 144 F. (2d) 82; O'Donnell v. G. N. Ry. Co. (N. D. Cal.) 109 F. Supp. 590; see, also, Billingham v. Hughes [1949] 1 K. B. 643, 9 A. L. R. (2d) 311, with Annotation at 320.

the trial court of its own motion. Although in the instant case the argument of plaintiff's counsel in some respects invaded the realm of passion and prejudice, we cannot say that the trial court abused its discretion in refusing to grant a new trial for misconduct.

The order of the trial court is affirmed.

JUDGE NELSON, having presided at the first trial below, took no part in the consideration or decision of this case.