**STATE OF MINNESOTA, CITY OF LITTLE CANADA, Appellant,**

v.

**John Burton RACHIE, Respondent.**

**No. C0–88–467.**

Court of Appeals of Minnesota.

Aug. 2, 1988.

Review Denied Sept. 20, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Paul T. Ostrow, Sweeney, O'Connor & Borer, Saint Paul, for appellant.

Jack S. Nordby, Steven J. Meshbesher, Meshbesher, Singer & Spence, Ltd., Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and NIERENGARTEN and SCHULTZ,* JJ.

## OPINION

FOLEY, Judge.

The State of Minnesota appeals the dismissal of a misdemeanor case for a speedy trial violation asserted by respondent John Burton Rachie. We reverse and remand for trial.

### FACTS

Rachie was arrested on June 23, 1986 for driving while under the influence of alcohol and other misdemeanors. He was arraigned on July 28, 1986. Trial was set for November 16, 1986. This date was continued by the court without objection of the parties. Five more trial dates were set over the course of the next 15 months.

On June 22, 1987, both parties were prepared to proceed, but the trial date was again continued by the court. Rachie maintains that he made a demand for a speedy trial on this date, but there is no transcript of the proceedings. The trial was subsequently continued until February 16, 1988. On that date, Rachie's motion to dismiss for denial of a speedy trial was granted.

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

There is no record of any other demand, either written or oral, for a speedy trial. The trial court considered evidence from the recollection of defense counsel and from an out-of-court discussion with a court reporter referring to conversations that allegedly took place on or about June 22, 1987 in which Rachie indicated a desire to go to trial and resolve the matter. The prosecution objected to the trial court's consideration of that discussion in determining the motion. Nonetheless, the trial court considered the unsworn hearsay comments of the court reporter in dismissing the case. The state appeals.

## ISSUES

1. Did the trial court err in dismissing the case on the ground that Rachie was denied his right to a speedy trial?

2. Should the appeal be dismissed on procedural grounds?

3. Should attorney fees be awarded to Rachie on appeal?

## ANALYSIS

1. The right to a speedy trial is guaranteed by the sixth amendment to the United States Constitution and Article I, Section 6 of the Minnesota Constitution. In addition, Minn.R.Crim.P. 6.06 provides:

On demand made in writing or orally *on the record* by the prosecuting attorney or the defendant, the defendant shall be tried within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period.

(Emphasis added.) Further, Minn.R. Crim.P. 11.10 provides in part:

A defendant shall be tried as soon as possible after entry of a not guilty plea. On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period. The time period shall not begin to run earlier than the date of the not guilty plea.

This rule does not specify the consequences of a failure to bring a defendant to trial within the specified time limits. The comments to Rule 11.10, however, state that the consequences and the time limits beyond which a defendant is considered to have been denied his constitutional right to a speedy trial are left to judicial decision. The comments refer to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and state that the existence or absence of the demand under Rule 11.10 provides a factor that may be taken into account in determining whether a defendant has been unconstitutionally denied a speedy trial. Minn.R.Crim.P. 11.11 comment.

In *Barker*, the Supreme Court developed a balancing approach to determine if a person has been denied the constitutional right to a speedy trial. The following factors are to be considered: (1) length of delay; (2) reason for delay; (3) defendant's assertion of right to a speedy trial; and (4) prejudice to defendant. *Id.* at 530, 92 S.Ct. at 2192. *See also State v. Rossbach*, 288 N.W.2d 714, 716 (Minn.1980).

The primary burden of ensuring a speedy trial lies with the prosecution and the court. *Barker*, 407 U.S. at 529, 92 S.Ct. at 2191. The Supreme Court explained:

Nothing we have said should be interpreted as disapproving a presumptive *rule* adopted by a court in the exercise of its supervisory power which establishes a fixed time period within which cases must normally be brought.

*Id.* at 530, n. 29, 92 S.Ct. at 2192, n. 29 (emphasis added). In analyzing a claim to a speedy trial under Minn.R.Crim.P. 6.06, the factors listed in *Barker* are pertinent. *See State v. Larson*, 369 N.W.2d 323, 324 (Minn.Ct.App.1985).

### Length of Delay

To a certain extent, the length of delay is a triggering mechanism. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The amount of delay that is necessary to pro-

voke inquiry depends on the circumstances, but "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530–31, 92 S.Ct. at 2192. *See also State v. Brooke,* 381 N.W.2d 885, 888 (Minn.Ct.App.1986). The 60–day limit after a demand is made on the record pursuant to Rule 6.06 is presumptively the necessary time limit to begin an inquiry.

■ Here, Rachie was arraigned on July 18, 1986. The first trial date was set for November 16, 1986. Five more trial dates were set over the course of the next 15 months. Such a delay weighs against the state but not as heavily as if there had been a deliberate delay to hamper the defense or harass the defendant. *See State v. Brouillette,* 286 N.W.2d 702, 706 (Minn. 1979). However, the trial court has held the prosecution "blameless" for the continuances, and there is no record of Rachie having made any objections to any of the continuances, thus a fair inference is that Rachie consented to the continuances. There is only one instance where a continuance was for the convenience of the court and the city, and Rachie made no objection on the record on that date.

In spite of the number of continuances and the number of months that lapsed between trial dates, there is no formal demand on the record for a speedy trial. The *Barker* court speaks to the delay that took place *after* a demand for a speedy trial had been made. Since we have no such demand and thus no triggering event, we cannot find a length of delay justifying dismissal.

*Reason for Delay*

The reason for the delay is closely related to the length of delay, and different weights should be assigned to different reasons. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.

The findings of the trial court indicate that the matter was set for trial on six different occasions. The trial court found that one trial date was continued by agreement of the court and the city attorney and offered no reasons for the continuances that took place thereafter. The trial court found that the continuances were not the fault of either the defense or the prosecution. In addition, the trial court found the prosecutor "blameless" for the number of continuances.

■ The trial court further found that the delay from June 22, 1987 until February 16, 1988 occurred because of judicial administrative problems. Ordinarily, delays caused by administrative difficulties should weigh against the government which must assume responsibility for bringing cases to trial. *See State v. Friberg,* 421 N.W.2d 376, 378 (Minn.Ct.App. 1988) (citing *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192). As the Court in *Barker* stated:

> "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

*Barker,* 407 U.S. at 522, 92 S.Ct. at 2188 (quoting *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905)). Further, the *Barker* court noted:

> This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise judicial discretion based on the circumstances, including due consideration of any applicable *formal procedural rule.*

*Id.* 407 U.S. at 528–29, 92 S.Ct. at 2191 (emphasis added).

There are no reasons on the record for the delays that occurred in this case. Further, Rachie's trial attorney is a seasoned attorney and he knows that there must be a demand on the record to trigger an inquiry into when the right to a speedy trial has been denied. He made no such demand.

*Assertion of Right*

██ That Rachie did not make a demand on the record as required by Rule 6.06 is not disputed. However, the trial court made a finding that the prosecutor and the court had "actual notice" of Rachie's demand for a speedy trial on June 22, 1987. This finding is not supported by the record. The important comments made by the trial court are as follows:

> I wasn't able to get ahold of Judge Lynch. * * * But I did have an opportunity to talk directly to his court reporter, Ms. Garrison, who told me * * * that on June 22 she *doesn't believe* that there is a *formal oral request on the record* from Mr. Meshbesher regarding a speedy trial, which is what Mr. Ostrow has in his affidavit. * * * And she told me further that the *general tone* of the discussions—there were numerous cases set on that date. She definitely remembers the Judge and the defense attorneys and city attorneys discussing the fact that these cases had multiple continuances. And that it's her recollection that Mr. Meshbesher may not have used the precise words of demanding a speedy trial, that phrase, but that it was clear from total discussions that took place in Judge Lynch's chambers and in the waiting room outside of his chambers, that was the intent of Mr. Meshbesher as well as other defense attorneys.

(Emphasis added.) The trial court further found:

> I do not find a *technical notice* in accordance with Rule 6.06. The decision would have obviously been easier there and in most circumstances if the continuances hadn't been so often, if the charge weren't so old, if it weren't as old as it is, that lack of motion being made on the record or in writing would have been determinative. The particular facts of this case, however, convince the Court that the interests of justice require that the actual notice from June 22 of 1987 be considered sufficient.

(Emphasis added.) The trial court based its dismissal on an out-of-court discussion with a court reporter. This was error. The demand for a speedy trial may be made orally or in writing, but it must be made on the record to give all parties notice of when to start the clock running. Further, a record preserves judicial proceedings and insures fairness.

With respect to notice of a demand for a speedy trial, Rule 6.06 places responsibility on the defendant, but the prosecutor and the trial court cannot ignore the rule. It is a simple matter for a defendant to make a specific demand for a speedy trial on the record. It is equally simple for the prosecutor to make an inquiry to determine whether a speedy trial has been demanded. It is understandable that in a high volume court there is difficulty in scheduling, but experienced trial lawyers and judges must protect the record. That was not done here.

It is not the role of the trial court judge to be an evidence seeker. That is the duty of the attorneys. However well motivated the trial court was, it exceeded its authority. *See Briggs v. Chicago Great Western Railway Co.*, 243 Minn. 566, 68 N.W.2d 870 (1955). In *Briggs*, the Minnesota Supreme Court held error by the trial court in visiting the premises and inspecting objects not involved in the trial and furthermore *obtaining explanatory information from unsworn persons* without the knowledge and consent of the parties. *Id.* at 570, 68 N.W.2d at 873.

We note that Rachie was represented by counsel and is an attorney himself. We conclude that he consented to the many continuances. Therefore, we hold that there is no constitutional violation.

*Prejudice to Accused*

██ Ordinarily, an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).

> Prejudice is not confined solely to harm to the defense of the case. The court should also consider prejudice from interference with the person's liberty, disruption of employment, financial hardship, strain on friendships and associations, and anxiety and stress to the defendant and the defendant's family.

*Brooke,* 381 N.W.2d at 889 (citing *Moore,* 414 U.S. at 26–27, 94 S.Ct. at 190).

The trial court concluded that Rachie was prejudiced financially and suffered personal anxiety by the delays. However, any financial prejudice and personal anxiety Rachie suffered was his own doing. He should have made a demand for a speedy trial on the record. He did not have to keep coming back to the courthouse and repeatedly consenting to continuances. He paid an attorney to act for him and to expedite the case if that was Rachie's wish. In addition, Rachie was an attorney himself and should have known that you must make a demand for a speedy trial on the record. Rachie has failed to demonstrate such prejudice as would warrant dismissal of the charges. *See State v. Corarito,* 268 N.W.2d 79, 80 (Minn.1978). Further, the *Barker* court stated:

> Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so.

*Barker,* 407 U.S. at 521, 92 S.Ct. at 2187.

Looking to the criteria set out in *Barker,* as well as the procedure for demanding a speedy trial under the Minnesota rules, the trial court's dismissal was clearly erroneous and is reversed.

2. Rachie filed his brief and then served and filed a motion to dismiss the appeal on procedural grounds. Rachie submits that the state failed to serve notice of appeal on the attorney general as required by Minn.R.Crim.P. 28.04, subd. 2(2) and asserts that this is a jurisdictional defect. The rule provides:

> Failure * * * to file proof of service does not deprive the Court of Appeals of jurisdiction over the prosecuting attorney's appeal, but it is a ground only for such action as the Court of Appeals deems appropriate, including dismissal of the appeal.

Minn.R.Crim.P. 28.04, subd. 2(2).

Rachie further raises several technical defects in the state's brief. He alleges no separate statement of facts, no separate page for statement of legal issues, and no procedural history, among other things. Violations such as these are not jurisdictional and do not affect the merits of the appeal. *See, e.g., State v. Grose,* 387 N.W.2d 182, 186 (Minn.Ct.App.1986) (state's failure to include statement of facts constitutes procedural error but not grounds for dismissal of appeal).

Rachie contends that the defective appeal has prejudiced him by causing him additional time and expense. However, the state's brief was timely filed, and none of the technical defects has affected the speed with which this appeal is proceeding.

The state offers no justification for the defects in its brief. In *Progressive Casualty Insurance Co. v. Kraayenbrink,* 365 N.W.2d 229 (Minn.1985), and *Boom v. Boom,* 361 N.W.2d 34 (Minn.1985), the supreme court held that a dismissal for noncompliance with the Rules of Civil Appellate Procedure is inappropriate when the failure to follow the rules neither affects the court's jurisdiction nor causes delay or prejudice. In *Progressive Casualty,* the appeal was allowed to continue despite appellant's failure to timely file its brief. In *Boom,* the appeal was allowed to continue despite the appellant's failure to file a transcript certificate. Rachie's motion to dismiss is denied.

3. On appeal, Rachie has requested attorney fees and costs pursuant to Minn.R.Crim.P. 28.04, subd. 2(6). Based on the documents submitted by Rachie's counsel, we find the requested amount of attorney fees and costs is not warranted. Rachie is awarded attorney fees in the amount of $1,500 and costs in the amount of $300.

### DECISION

The matter is reversed with the charge reinstated and the case remanded for trial.

Reversed and remanded.