## WILLIAM F. REICK v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 5, 1915.

Nos. 19,071—(257).

**Verdict not excessive.**

1. Action to recover for personal injuries. At the second trial plaintiff

[1] Reported in 151 N. W. 408.

had a verdict of $4,225 which was reduced to $3,500 by the trial court. *Held* that the verdict as reduced is not so clearly excessive as to require this court to interfere therewith.

**Same — method of reaching verdict.**

2. A verdict rendered pursuant to an agreement between the jurors that each should designate an amount, that the aggregate of such amounts should be divided by 12 and that the quotient should constitute the verdict, could not be permitted to stand, but the record fails to show that such method, or any other improper method, was adopted in determining the amount of the verdict in question.

Action in the district court for Wright county to recover $5,250 for personal injuries. The case was tried before Stolberg, J., and a jury which returned a verdict for $4,225. From an order denying defendant's motion for a new trial, provided plaintiff consent to a reduction of the verdict to $3,500, defendant appealed. Affirmed.

*Cobb, Wheelwright & Dille* and *W. H. Cutting,* for appellant.
*J. J. Woolley,* and *Hall, Tautges & Loeffler,* for respondent.

TAYLOR, C.

Plaintiff was the driver of an ice wagon for the Spring Water Ice Co. of Minneapolis. Early each morning, he drove to defendant's yards in Minneapolis, and loaded his wagon with ice taken from a car standing upon a side track. He backed the wagon against the car and with the aid of a helper slid the cakes of ice out of the car upon the wagon. On September 18, 1913, while he was moving a heavy cake of ice through the car door, defendant, without warning, switched another car against the one in which he was at work with such force that the cake of ice slid so as to pin his leg against the car door and inflict substantial injuries. Although he was thrown over backward, his leg was held so firmly that his body did not fall to the floor until the leg was released by his helper. He brought suit for damages and recovered a verdict for $4,225. Defendant moved for a new trial. The court made an order granting the motion, unless plaintiff consented to reduce the verdict to the sum of $3,500, but denying the motion in case he filed such consent within

15 days. He filed such consent within the prescribed time, and thereafter defendant appealed.

Only two questions are presented: (1) Whether the verdict as reduced is still excessive; (2) whether it appears that the jury were guilty of misconduct.

1. The case has been tried twice. At the first trial, which took place about three months after the injury, the jury returned a verdict of $3,600. This was set aside by the trial court as excessive. At the second trial, about six months later, the jury returned a verdict of $4,225. This was reduced by the trial court as above stated. In determining whether the injuries are such as to justify damages in the sum of $3,500, we must look at the evidence in the light most favorable to plaintiff, for the jury had the right to consider it from that point of view. At both trials, plaintiff testified that he had sustained an injury in his knee and also in his back. At the first trial his physician, Dr. McLaughlin, testified that the knee had already improved considerably and would probably become fairly normal in a short time. All the physicians, including Dr. McLaughlin, testified that they could discover no evidence of an injury to his back. At the second trial, six months later, Dr. McLaughlin testified that inflammation then existed in the knee joint and that in his opinion such condition would be permanent. The doctor stated: "He will always have more or less stiffness and weakness in the knee, a sore knee. It will be sore especially when pressure is made on the knee in stepping down or in carrying a heavy weight on the shoulder. There is a probability that the knee may become stiff later on in life." Plaintiff and his wife both testified that the knee troubled him continually, especially in going up and down stairs and in carrying heavy weights. Defendant's physicians testified that they could discover no evidence of inflammation in the joint and that in their opinion the knee was practically normal. They stated, however, that if the joint was in fact inflamed its condition was serious. As at the first trial, the physicians all agreed that they could discover no evidence of an injury to plaintiff's back. They all admitted, however, that there might be an injury to the back resulting from a wrench or strain, which could not be discovered by a

physical examination, and that they could not say that plaintiff's claim was not true.

At the first trial, the evidence indicated that the injury was temporary only, and would not result in any permanent disability. From the evidence at the second trial, the jury could have found that the lapse of time had disclosed that the injury was permanent, and that the disability was likely to increase in the future. While we should have been better satisfied if the trial court had made a greater reduction, yet, in view of all the circumstances appearing from the record, and of the rules governing this court in such matters, we are not prepared to say that the verdict, as it now stands, is so clearly unwarranted as to require this court to interfere therewith.

2. Defendant contends that the jury rendered a "quotient" verdict. This claim is based upon the fact that, after they had reported, a sheet of paper was found in the jury room upon which, in the handwriting of one of the jurors, appeared two columns of figures, each containing 12 amounts, which had been added together and divided by 12. The amounts in one column varied from 1,200 to 5,300, and the quotient was 4,104; the amounts in the other column varied from 1,000 to 5,200 and the quotient was 4,225, the exact amount of the verdict returned. This piece of paper constitutes all the evidence bearing upon the question of misconduct. There is nothing to show when the figures were made, nor whether they were known to, or used by, any of the jurors, other than the fact that they were in the handwriting of one of them and were found in the jury-room.

If it had been shown that the jurors had made an agreement that each juror should designate an amount; that the sum of these amounts should be divided by 12; that the quotient so obtained should be the verdict, and that the amount of the verdict had been determined in accordance with such agreement, such verdict could not be permitted to stand; but the mere existence of these figures upon a sheet of paper, without anything more, is not enough to establish that the jurors had made such an agreement. If each juror had designated the amount to which he thought the plaintiff entitled, and the sum of these amounts had been divided by 12, and there-

129 M.—2.

after, without any previous agreement to do so, the jurors had all agreed upon the amount so obtained and returned it as their verdict, such proceeding would have been unobjectionable. The vicious feature of a "quotient" verdict consists in the agreement of the jurors to disregard their own judgment, and to be bound by the result obtained by such method,—in agreeing to adopt as their verdict an amount to be determined by the future act of their fellow jurors and not known at the time of making the agreement. There is nothing in the present case to justify a finding that such method was adopted. Where the facts shown are as consistent with rightful conduct as with wrongful conduct, the presumption is that the conduct was rightful.

Order affirmed.