CLARA B. LARSON v. WISCONSIN RAILWAY, LIGHT & POWER COMPANY.[1]

October 19, 1917.

No. 20,505.

**New trial — newly discovered evidence — discretion of court.**
    1. The granting of a new trial upon the ground of newly discovered evidence is addressed largely to the discretion of the trial court, and

[1]Reported in 164 N. W. 666.

where the same is merely cumulative, it was not error to refuse a new trial.

**Reduced verdict not excessive.**

2. The verdict as reduced by the trial court, *held* not excessive.

**New trial — verdict not caused by passion.**

3. In this case the verdict was not so excessive as to indicate that the jury were influenced by passion and prejudice in the determination of other issues, so as to require the granting of a new trial upon that ground.

**Street railway — question of negligence for jury.**

4. The testimony made a case for the jury upon the question of negligence.

**Quotient verdict — amount of verdict not conclusive evidence.**

5. While a quotient verdict is irregular, and would not be permitted to stand, yet the court will not set aside a verdict as a quotient simply on account of the amount thereof.

Action in the district court for Winona county to recover $5,190 for injuries received in alighting from defendant's street car. The case was tried before Granger, J., and a jury which returned a verdict for $3,037.-50. From an order denying its motion for a new trial if plaintiff consented to a reduction of the verdict to $2,060, defendant appealed. Affirmed.

*Webber & Lees,* for appellant.

*Henry M. Lamberton,* for respondent.

QUINN, J.

This action is one to recover for injuries to the plaintiff, caused, as she alleges, through the negligence of the defendant, its agents and servants, in the management and operation of one of its street cars, upon which the plaintiff was a passenger. The negligence complained of is, that the motorman started the car while plaintiff was in the act of alighting therefrom, thereby causing her to fall and sustain the injuries complained of. The plaintiff had a verdict for $3,037.50. Upon motion of defendant, the trial court granted a new trial upon the ground that the amount of the verdict was excessive, it appearing to have been given under the influence of passion and prejudice, unless the plaintiff remit therefrom the sum of $977.50, in which case a new trial was denied. The

plaintiff filed a stipulation consenting to the remittance, and defendant brings this appeal.

The appellant assigns as error: (1) That the court erred in denying defendant's motion for a new trial; (2) that the court erred, after expressly finding that the verdict was the result of passion and prejudice, in directing a judgment to be entered against the defendant for $2,060 on condition that plaintiff remit the balance; (3) that the verdict was not justified by the evidence and was contrary to law; (4) that the verdict was a quotient verdict and should be vacated for that reason.

There was testimony offered upon the trial, on behalf of the plaintiff, which tended to show: That plaintiff was 29 years of age, weighed about 190 pounds, and worked for her mother in a hair dressing establishment in the city of Winona. That at about two o'clock p. m. on December 4, 1915, plaintiff, in company with her mother, got onto the defendant's street car at the corner of Third and Main to go west to Fifth and McBride streets. That this car was so constructed, as we understand, that the passengers entered and got off through doors at the front right hand corner of the car—the entrance being farthest to the front and the exit immediately back of it, with a curved railing separating them—and when the doors closed the steps folded up. That when the plaintiff and her mother got onto the car they each had a bundle of five window shades which were placed on the platform near the motorman. That as the car approached the corner of Fifth and McBride streets the mother signaled the car to stop, and then went out onto the platform by the exit door, when plaintiff handed her one of their bundles over the railing, which the mother received and then got off the car. In the meantime plaintiff picked up the other bundle and started to get off the car through the exit when the door closed. She then asked the motorman to wait a minute, that she wanted to get off with her mother, and he then opened the entrance door, the one nearest to the plaintiff. The plaintiff testified: "I started to get off from the car. * * * I got down on the step with both feet and was in the act of putting the right foot to the ground when I felt the step jerk, and I was pitched forward onto the ground. * * * The car started, and the starting of the car and the step, both, was what pitched me forward on the ground, and I landed on my hands and knees and my right limb was twisted, the bone was resting on the ground."

The street was smooth, dry and dusty where she fell and there was no snow or ice. The car started and stopped in an instant, and the motorman got off and he and another man helped her to Mrs. Wolf's house nearby. She called Dr. Lynch, who came with his car and took the plaintiff and her mother to the mother's office, where he cared for the plaintiff's foot. The plaintiff's testimony as to how the accident took place was fully corroborated by the testimony of the mother. The motorman and four passengers testified on behalf of the defendant. Their testimony was not in harmony as to how or just where plaintiff fell, but they testified that the car did not start and stop as claimed by plaintiff. In this particular there was a sharp conflict in the testimony. There is testimony that plaintiff was confined to her bed for four weeks, and sat in a chair for nine weeks before she could put her foot to the floor; that she has been unable to stand on her foot to work since the injury, and that she has worn a bandage since the injury. Dr. Lynch testified, in effect, that the plaintiff had a dislocation of the right ankle; that the ligaments were torn loose on both sides; that the dislocation gave him a great deal of trouble and that she seemed to be in great pain, complaining of continual pain all the time; that the joint seemed to be much swollen and was black and blue; that after he set the joint and put it in splints she was put to bed where she remained for four weeks; that he cared for her for 13 weeks during which time she was unable to walk, and that he advised her to keep it bandaged as it did not seem to be as firm and solid as he expected it to be; that he did not think it would ever be as perfect as it was before, and that he thought it would always have to be supported by a bandage.

Dr. Lindsay testified that he examined plaintiff's ankle on the day before testifying, that it was bandaged rightly, that it was somewhat larger than the left one, somewhat limited as to motion, and that in his opinion she would never recover completely.

Dr. Rosenberry, called by the defendant, testified that he examined the plaintiff at the noon recess of court; that he could not see very much wrong with the ankle; that there was no swelling or deformity and apparently slight limitation of motion, and that he could not see that there should be any permanent injury there nor why she could not use her ankle then.

138 M—11

Under its first assignment of error, the defendant urged that a new trial should have been granted: (1) On the ground of newly discovered evidence; (2) because the verdict was excessive and appeared to have been given under the influence of passion and prejudice; and (3) that the verdict was not justified by the evidence and was contrary to law. The granting of a new trial upon the ground of newly discovered evidence is addressed largely to the discretion of the trial court. 2 Dunnell, Minn. Dig. § 7123, and cases cited therein. The so-called newly discovered evidence was merely cumulative, and there was no abuse of discretion in the court's refusing a new trial upon that ground.

As to the amount of damages allowed, it appears that plaintiff was seriously injured and suffered much pain, incurred expense in trying to be cured and lost considerable time. The question of damages was submitted to the jury under careful instructions. The amount of the verdict was not so excessive, when compared with what the evidence reasonably tends to show, that it can be well said that the same was awarded without a fair and impartial consideration of the testimony. It is well settled that, in actions of this kind, the trial court may, in the exercise of a sound discretion, when it deems a verdict excessive and the result of passion and prejudice, deny a new trial on condition that the prevailing party remit such amount as shall leave the amount of recovery not excessive in the judgment of the court. But when the damages are so excessive and the circumstances disclosed by the evidence are such as to indicate a fair probability that the jury were influenced by passion and prejudice in the determination of the other issues, a new trial should be granted. We discovered no abuse of discretion on the part of the trial court in refusing to grant a new trial in this case. Craig v. Cook, 28 Minn. 232, 9 N. W. 712; Pratt v. Pioneer Press Co. 35 Minn. 251, 28 N. W. 708; Goss v. Goss, 102 Minn. 346, 113 N. W. 690; Whitney v. Kaliske, 131 Minn. 261, 154 N. W. 1100.

We are of the opinion that the testimony made a case for the jury and that the verdict is justified by the evidence.

Appellant urges that the verdict was a quotient verdict and should be vacated for that reason. We are unable to agree with this contention. A quotient verdict is one where the jury agree in advance that each shall set down on paper the amount of damages which, in his opinion, should

be allowed, the sum of such amounts to be divided by 12 and the quotient accepted as the verdict. 12 Cyc. 679. While a verdict so arrived at would be irregular and not permitted to stand, there is no showing that such was done in this case, and the court will not set aside a verdict as quotient simply by guessing that it was such on account of the amount thereof. 1 Minn. 131 (156), 61 Am. Dec. 494.

Affirmed.