## HELEN ATWOOD KENNEDY v. HARRY Q. CAUDELL AND OTHERS.
## KARL J. KRAHL, RESPONDENT.

151 N. W. (2d) 407.

June 2, 1967—No. 40,204.

*Brenner & Harroun,* for appellants.

*King, MacGregor & Lommen* and *John P. Lommen,* for respondent Krahl.

*Taylor Law Firm* and *Barry M. Lazarus,* for respondent Kennedy.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying motions of defendants Harry Q. Caudell and Hull-Dobbs, Inc., also known as Hull-Dobbs Company, for judgment notwithstanding the verdict or for a new trial. The action was brought by Helen Atwood Kennedy, a passenger in an automobile driven by Harry Q. Caudell and owned by his employer, Hull-Dobbs, Inc., against Caudell, Hull-Dobbs, and Karl J. Krahl, driver of the other auto involved. The trial court dismissed as to defendant Krahl and directed a verdict against Caudell and Hull-Dobbs on the issue of liability, submitting only the question of damages to the jury. It is contended that the trial court erred in dismissing as to one defendant and directing a verdict against the others. It is also contended that the verdict awarded to plaintiff was so excessive as to have been given under the influence of passion and prejudice.

The record establishes that Helen Atwood Kennedy, age 31, was a passenger in a motor vehicle, owned by Hull-Dobbs and operated by

its employee, Caudell, as it proceeded south on Fremont Avenue in Minneapolis and approached the intersection of that street with West 26th Street. At this intersection 26th Street is a through street protected by an arterial stop sign located on the corner of Fremont Avenue. The streets were dry, and the hour was about 2 a. m. Defendant Krahl was operating his vehicle in a westerly direction on 26th Street. The evidence established that Krahl approached the intersection at a speed of about 30 miles an hour and that when he was 50 feet from the intersection he observed the Caudell vehicle about the same distance back from the intersection, approaching at a speed of about 20 to 25 miles an hour—"going slow like the car would travel if it was going to stop." Krahl continued toward the intersection at about the same rate of speed until he was 15 feet from the point of impact, at which time he first applied his brakes. The Caudell car did not stop for the intersection and was struck by the Krahl vehicle in about the middle of the left side. Both vehicles came to rest in the intersection. We think the record fairly supports the correctness of the trial court's action in directing a verdict against defendants Caudell and Hull-Dobbs, Inc. This is clearly a case in which defendant Caudell went through a stop sign in violation of various provisions of the Highway Traffic Regulation Act.[1]

■ Caudell and Hull-Dobbs offered no evidence in defense or in support of the contention that there was liability on the part of de-

---

[1] Minn. St. 169.14, subd. 1, provides generally that no person shall drive at a speed greater than is reasonable and prudent under conditions then existing.

§ 169.14, subd. 2, provides generally that 30 miles per hour is the maximum lawful speed in a municipality.

§ 169.14, subd. 3, provides generally that a driver of any vehicle shall drive at an appropriate reduced speed when approaching and crossing an intersection.

§ 169.20, subd. 3, provides generally that the driver of a vehicle shall stop as required at the entrance to a through highway and yield the right-of-way to other vehicles which are approaching on the through highway so closely as to constitute an immediate hazard, and further provides that the driver of a vehicle shall likewise stop in obedience to a stop sign.

§ 169.01, subd. 57, provides: " 'Stop' means complete cessation from movement."

fendant Krahl. It seems to us that this is a case in which the evidence as a whole so overwhelmingly preponderates in favor of both the plaintiff and defendant Krahl as to leave no doubt as to the factual truth. Accepting the view of the evidence most favorable to the appellants and admitting every inference which may be fairly drawn therefrom, it would appear that the evidence is such that it would have been the manifest duty of the trial court to set aside a verdict against the plaintiff or codefendant Krahl. 10 Dunnell, Dig. (3 ed.) § 5082; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637.

■ This case is controlled by those authorities which express the well-settled principle that one driving on a through highway approaching an intersection is entitled to maintain the prima facie lawful speed and rely on the driver on the intersecting road to stop at the stop sign as required by Minn. St. 169.01, subd. 57, and 169.20, subd. 3. Bocchi v. Karnstedt, 238 Minn. 257, 56 N. W. (2d) 628; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Lowery v. Clouse (8 Cir.) 348 F. (2d) 252; Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205.

■ The principal error assigned by appellants is that the verdict of $20,000 awarded to plaintiff is excessive and based on passion and prejudice. In considering this point, it should be noted that at the time of the accident plaintiff was divorced, had 4 minor children, and was employed as an office worker. The car in which she was a passenger was involved in a severe collision resulting in extensive property damage. She sustained injuries to her ribs, neck, and back. After home treatment she consulted several physicians, as a result of which it was determined that she had sustained a severe aggravation to a prior back infirmity. The original infirmity was described as a spondylolysis, which is commonly known as an inherently weak back. It was pointed out that in the normal back the vertebrae are held together by facets, but where a spondylolysis exists, the vertebrae are held or supported by muscles and ligaments. The accident produced a spondylolisthesis—described as a slipping of the vertebrae, one over the other—involving a slight forward slipping of plaintiff's fifth lumbar vertebra on the sacrum. Two-thirds of the body weight rests in this particular area, and the

existence of the spondylolisthesis results in weakness and pain. Three medical witnesses found evidence of back injury in the nature of muscle spasm and continuing complaints of pain causally related to the traumatic aggravation of plaintiff's spinal defect. No medical testimony to the contrary was introduced in behalf of appellants.

An examination of the record indicates that the injury to plaintiff's ribs cleared up in probably two or three weeks and the injuries to her neck cleared up within a week or two. However, the injury to her back persists and continues to bother her, and medical opinion was to the effect that the condition is permanent. She has incurred doctor bills and medical expenses of approximately $500. Since the accident she has supplemented medical attention by home treatment. This course of treatment has enabled her to continue with her employment. The home treatment has consisted of the application of a heating pad, hot showers, and exercises prescribed by her physicians. She wears a back brace for support. Because of the pain and discomfort, her physical activities have been curtailed. The testimony of her doctors with reference to the permanent nature of her condition stands uncontradicted. An orthopedic physician testified that plaintiff requires a surgical fusion on her spine to relieve the pain and discomfort which is associated with her unstable back. Should such an operation be completely successful, it would result in a permanent stiffening of one of the joints of her back. The proposed surgical fusion would involve hospital and medical expenses in the approximate amount of $1,000 and loss of income during the period of disablement in excess of $2,500.

While the amount of the verdict appears to be generous, we cannot say on the basis of the record that it is so excessive as to require a new trial. This court has repeatedly said that excessiveness of a verdict is a matter basically for the trial court and that we interfere only in those rare situations where there is a plain injustice or a monstrous or shocking result. In McCormick v. Malecha, 266 Minn. 33, 43, 122 N. W. (2d) 446, 453, we said:

"* * * The criteria expressed in some decisions—that the verdict should not be revised unless it shocks the court's sense of justice and

40

the impropriety of allowing the verdict to stand is so manifest as to show a clear abuse of discretion, or unless it is fairly evident that the trial judge failed to keep the jury within the bounds of reason and common sense—do not provide general standards which are easy to apply."

The particular facts in each case must serve to measure the damages. In view of the permanent character of plaintiff's injuries and the degree of pain and discomfort which she has sustained and which will continue in the future, we cannot say that the trial court abused its discretion in determining that the verdict was not excessive.

Affirmed.