## COUNTY OF HENNEPIN v.
## ARTHUR J. SHASKY AND OTHERS.

182 N. W. (2d) 431.

December 24, 1970—No. 42369.

*Earl H. A. Isensee,* for appellants.

*George M. Scott,* County Attorney, and *David E. Culbert,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Rosengren, JJ.

CHESTER G. ROSENGREN, JUSTICE.*

In this condemnation proceeding instituted by Hennepin

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

County, both the county and landowners Arthur J. Shasky and Edna M. Shasky appealed to the district court from the award of $9,600 plus appraisal fees made by the court-appointed commissioners as compensation for the property taken from the Shaskys. After trial, a jury returned a verdict awarding them $2,192.28. They appeal to this court from an order denying their subsequent motion for a new trial.

Before the taking, appellants owned 2.64 acres of unplatted land in St. Louis Park. To the east of this property was an 89-foot-wide unplatted strip of land owned by a Mrs. McDermott. Thirty-fourth Street runs to the east edge of the McDermott property. The north end of the property at issue abuts Minnehaha Creek. The county acquired .55 of an acre at the north end of the property in order to better construct a needed culvert after changing the channel of Minnehaha Creek. Only the northeasterly portion of appellants' property abutted the creek following the taking. The county also acquired a 10-foot slope easement over the southwesterly end of the property. This easement expired December 31, 1968.

Appellants assign as prejudicial error: The failure of the trial court to give requested instructions; admission into evidence of a certain contour map of the area of, and adjacent to, the land to be taken; abuse of the trial court's discretion in conducting a jury view of the condemned property; claimed use of a quotient or prearranged compromise verdict by the jury; and instructions to members of the jury that they should not discuss their deliberations with anyone. In the absence of prejudicial error, we affirm.

■ Appellants contend that the trial court erred in refusing to instruct the jury as follows:

"Prior to the taking by the County Highway Department in this condemnation proceeding, Mr. and Mrs. Shasky were the owners of the property which abutted Minnehaha Creek. By rea-

son of such ownership, they had what is known as riparian rights and are called riparian owners. A riparian owner owns the land on a navigable stream to the low water mark, together with the riparian rights. As riparian owner he may deny access to and from the water at his particular property; he may build piers and wharves from his land out to the navigable waters; he has an exclusive right of access to the water by reason of his ownership of the abutting land; and he may claim accretions and relictions caused by changes in the current or flow of the water. The benefits and facilities arising from the location of the land on the water may mean the difference between a valuable piece of property and one that is comparatively worthless. The riparian owner has an interest and property right in maintenance of water in natural condition which is special and distinct from that of the public in general. [Petraborg v. Zonfelli, 217 Minn. 536, 15 N. W. (2d) 174.]

"Riparian owner is defined as one who owns land on the bank of a watercourse. (Black's Law Dictionary, Fourth Edition.)"

Denial of this request was well within the discretion of the trial court and did not constitute an abuse thereof. While the requested language may be a correct statement of abstract law, there is the possibility that to give the requested instruction might so overly emphasize certain facts as to be argumentative. In addition, it appears that appellants' theory of the case and the substance of their request as supported by the evidence are adequately covered by the charge as a whole. The court instructed:

"* * * These takings also may cause what we call indirect damage to the remainder of the property, and these potential indirect damages also should be considered by you in assessing damages to which the landowners are entitled to in this proceeding. The potential indirect damages to the balance of the property which may be considered by you in measuring damages are such as any impairment of the view, if any, which may be caused

by the construction of these highways involved, or it may mean any deprivation of direct access to Minnehaha Creek over the respondents' property which may be caused by the construction involved, * * *.

\* \* \* \* \*

"* * * In determining the fair market value of property, a jury may consider not only the opinion of the various witnesses who testified as to market value, but also all other evidence in the case which may aid in determining market value, such as the location of the property, the surroundings and the general environment, and any peculiar suitability of the property for particular uses and the reasonable probabilities as to potential future use, if any, for which the property was suitable or physically adaptable, as shown by the evidence to have existed at the time of the taking."

These instructions are sufficient to convey the meaning of the requested instruction as it was supported by the evidence to the jury. Cf. Hammond v. Minneapolis St. Ry. Co. 257 Minn. 330, 101 N. W. (2d) 441. The fact that the request is in the form of a quotation from a decision of the supreme court does not compel the trial court to grant it. Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180.

■ Appellants assign as error the trial court's failure to instruct the jury as follows:

"In assessing the amount of damages, it is permissible for the jury to take into consideration the present low value of money and the high cost of living. Nubbe v. Hardy Continental Hotel System of Minnesota, Inc. (1948) 225 Minn. 496, 31 N. W. (2d) 332; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18."

While such language might be proper argument to a jury, refusal of this instruction was within the discretion of the trial court and was not prejudicial error.

■ Appellants assert prejudicial error in the failure of the trial court to give appellants' requested instruction which states:

"There is uncontradicted testimony in this case that people had driven across Mrs. McDermott's property and across Mr. Shasky's property for many years. It is the law of Minnesota that if a person permits travel across his property it becomes a public road. It is also the law of Minnesota that Mrs. McDermott's property being located in the City of St. Louis Park, the City could condemn Mrs. McDermott's property and extend Thirty-Fourth Street across the same to Mr. and Mrs. Shasky's property. It is also possible for Mrs. McDermott to dedicate her property for street purposes so that Mr. and Mrs. Shasky could reach their property. The plat of Isensee's Addition, introduced as an exhibit in this case, indicates that Mrs. McDermott has dedicated a portion of her property, consisting of an extension of Thirty-Fourth Street, to the Shasky property. Anderson v. Birkeland (1949), 38 N. W. 2d 215, 229 Minn. 77."

The first two sentences of the requested instruction appear to ask the court to assume the existence of facts on an issue not before the court and not a matter of judicial notice. They also are subject to criticism as to their claimed recitation of law. This part of the request was properly refused. The third and fourth sentences ask the court to speculate on possibilities unsupported by the evidence. This was also properly rejected. The final sentence requests accentuation of an evidentiary fact. Any review of the evidence in the charge to the jury is purely discretionary with the trial court. 19 Dunnell, Dig. (3 ed.) § 9784. Here, there was no abuse of that discretion.

■ Appellants submit as error the admission of a contour map of the property introduced in the proceedings, alleging insufficient foundation for its admission and failure to disclose the existence of the map in interrogatories submitted for discovery purposes.

It appears from the record that there was a sufficient founda-

tion to admit the map into evidence. At the trial, the attorney for Hennepin County questioned a claimed expert in order to establish his expertise in the area of hydraulics engineering, eliciting qualifications most likely sufficient to qualify him as an "expert" in that field. The witness stated that he was familiar with the area portrayed in the map; that the map was a fair representation of the ground lines in the area; and that spot checks of the map made by comparing profiles taken by county field personnel with the map had shown inaccuracies thereon to be within the normal tolerances permitted by the map scale. He also testified that, to his knowledge, there had been no change in the physical condition of the property from the time the map was prepared until March 30, 1967, when the commissioners' award was filed.

Foundation for admission of the map into evidence is sufficient if there is sworn testimony that the map was a correct representation of the area in question at the date of taking. Hall v. Connecticut Mutual Life Ins. Co. 76 Minn. 401, 79 N. W. 497. Admission here was clearly no abuse of the trial court's discretion in such matters. Kellett v. Wasnie, 261 Minn. 440, 112 N. W. (2d) 820.

In discovery interrogatories dated September 26, 1967, appellants asked respondent whether the county had *made* a contour map. Respondent answered in the negative. At the trial a contour map was offered and received over objection.

One of the main purposes of Rules 26.02 and 33, Rules of Civil Procedure, is to enable litigants to prepare for trial free from surprise. Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N. W. (2d) 110. We cannot penalize a party for truthfully answering a question formulated by the other party who now complains of being misled by the requested answer, although it was responsive. Here, appellants have failed to indicate that they were misled, and it appears that this contour map was an exhibit in a hearing on a motion to dismiss made nearly 1½ years before the trial

from which this appeal is taken. Given such circumstances, we have no choice but to reject appellants' contention.

■ We reject the claim that the trial court abused its discretion when it allowed the jurors to separate into two groups while viewing the property being condemned or when it permitted the jurors to "commingle" with county employees out of the sight and hearing of the court. All of the viewing procedures, including the separation into two groups so that the less agile would not have to chance injury in the soft soil being viewed, were agreed upon by both parties and no objections were raised until after the jury had returned its verdict. It clearly appears that the court and counsel applied safeguards sufficient to ensure—

"* * * (1) that the wrong objects are not viewed, (2) that the conditions viewed are substantially the same as those existing at the * * * [relevant time], and (3) that no information will be obtained in violation of the hearsay rule from unsworn persons present at the view." Briggs v. Chicago Great Western Ry. Co. 243 Minn. 566, 570, 68 N. W. (2d) 870, 872.

At the viewing, one of the jurors did question a county employee. However, it is uncontradicted that the employee's only response to the question asked was to advise the juror to direct all inquiries to the court. Appellants have not been prejudiced in any manner by this occurrence, and this court will not speculate on the mere possibility of other such occurrences which may have been prejudicial.

■ There appears to be no evidence to support the claim that the verdict rendered was the result of a "quotient" or prearranged compromise verdict. The evidence supports the amount awarded by the jury, and the court expressly instructed against jury use of the quotient verdict. This court will not set aside a verdict as a quotient verdict simply by guessing it was such, based on the amount thereof. Larson v. Wisconsin Ry. Light & Power Co. 138 Minn. 158, 164 N. W. 666.

Appellants claim that they have been unable to ferret out

irregularities in the deliberations of the jury because of the trial court's instructions to the jurors. In the instructions now cited as prejudicially erroneous because they tended to conceal possible jury misconduct, the trial court said:

"Now, ladies and gentlemen, the parties in this case have agreed in our little conference up here that if you arrive at a verdict when the court is in recess, your verdict may be sealed and returned to the court at the next ensuing session of the court. In that event, your verdict will be enclosed and sealed in an envelope furnished you for that purpose. The sealed envelope will then be retained by your forelady or your foreman, as the case may be, and you may then return to your homes. Should this method be found necessary to be used, ladies and gentlemen, or should the eventuality, in any event, come about that it becomes necessary for you to disband before you arrive at any verdict, and should the eventuality arise that the Court may have to allow you to go back to your homes before arriving at a verdict, and in such eventuality resuming your deliberations on the next ensuing court day, in either of those two eventualities, ladies and gentlemen, you must, either in the arriving at a verdict through the sealed verdict method or having your deliberations interrupted, in either of those events you must scrupulously be careful, ladies and gentlemen, not to divulge what your verdict is, if you have arrived at one through the sealed verdict method, because that would be very improper, and I know none of you folks on this jury want to do anything that's improper, I know that. I must warn you that you must not do it. That's all in fairness to these people. Your verdict must be delivered to the court, and to the court alone."

Appellants' contentions appear groundless. As succinctly stated in respondent's brief:

"* * * [T]he Court did not instruct the jury that they should not discuss the verdict with anyone after being delivered to the Court. The Court, as the record discloses, did instruct the jury

that prior to delivering its verdict to the Court, its deliberations and its verdict should not be discussed with anyone."

The possible idiosyncrasies of individual jurors in refusing to reveal the course of deliberations cannot be traced to some flaw in these instructions. If counsel has some proof to substantiate his claims of jury misconduct, the trial court is the proper forum for its presentation. On the record before us, there is insufficient evidence to warrant a new trial on this ground or even to remand and direct the trial court to consider this claim of appellants. Cf. Stayberg v. Henderson, 277 Minn. 16, 151 N. W. (2d) 290.

Affirmed.