Eileen M. KATH, individually and as Executrix of the estate of Robert L. Kath, deceased, Respondent,

v.

The BURLINGTON NORTHERN RAILROAD COMPANY, Appellant.

No. C5–88–1825.

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied July 27, 1989.

Michael S. Polk, Hertogs, Fluegel, Sieben, Polk, Jones & Laverdiere, Hastings, for respondent.

E. Scott Savage, Michael F. Richman, David L. Arrington, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Thomas W. Spence, Megan K. Ricke, Thom-

as W. Spence Law Office, St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Eileen Kath sued appellant Burlington Northern Railroad Company (Burlington) for the wrongful death of her husband, Robert Kath. The jury found Burlington had been negligent under the Federal Employers' Liability Act, 45 U.S.C. A. § 51 et seq. (1986) (FELA), and had violated the Federal Boiler Inspection Act, 45 U.S.C.A. § 23 (1986). Burlington's post-trial motions were denied and it appeals.

## FACTS

The decedent, Robert Kath, in 1942, at the age of 18, began working for Northern Pacific, Burlington's predecessor, as a laborer. For approximately two months, he worked in a roundhouse where steam locomotives were brought for maintenance and repairs. Magnesia blocks containing asbestos were used to insulate the metal boilers in the locomotives and asbestos pipe covering was used to insulate the steam pipes within the cab of the engine. Robert Kath's job duties included sweeping up, cleaning up and hauling asbestos, and removing and salvaging the asbestos from railroad equipment. Kath was exposed to asbestos dust in the atmosphere.

Kath then held the positions of fireman and engineer working "on line" in the cab of a steam locomotive, directly behind the boiler, which was insulated with asbestos. This insulation would deteriorate through age and vibration, and would permeate the air. In June 1983, at the age of 62, the decedent took an early retirement, stating he did not want to work for anyone else. He began receiving pension benefits.

In 1985 Kath became ill and he died of desmoplastic mesothelioma in May of 1986. At trial, Kath's expert witness testified that chest x-rays taken in 1982 showed signs of pleural asbestosis. Other witnesses stated there was a direct cause and effect relationship between Kath's occupational exposure to asbestos while working for Burlington and his death. Prior to the onset of mesothelioma, Kath's health was described as "excellent" except for a problem alleviated by successful heart surgery. On June 1, 1988, the jury returned a verdict in the sum of $1,005,443.35, including medical expenses, costs, disbursements, and compensation for Kath's pain and suffering and the pecuniary losses of Mrs. Kath and four of the five Kath children.

## ISSUES

1. Did the trial court's jury instructions and special verdict form, when viewed in their entirety, convey to the jury a clear and correct understanding of the law?

2. Did the trial court err in refusing to instruct the jury not to arrive at a verdict by agreeing to a quotient process?

3. Was the trial court's denial of appellant's motion for a *Schwartz* hearing an abuse of discretion?

4. Did the trial court clearly abuse its discretion in determining that the damage award was not excessive?

5. Did the trial court abuse its discretion in admitting the "Alton Railroad" documents into evidence?

## ANALYSIS

1. Burlington contends that the trial court's instructions and the special verdict form deprived Burlington of a jury trial of the negligence claims under the FELA and of the claims under the Boiler Inspection Act by directing jury findings on Burlington's alleged actions.

The FELA provides that any railroad common carrier engaging in interstate commerce shall be liable in damages for the death of an employee if such death results in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its

cars, engines, appliances, machinery * * * or other equipment.

45 U.S.C.A. § 51 (1986).

Burlington assails as error the wording of special verdict question 11, which reads in part:

> Was the defendant railroad *negligent* in one or more of the following respects?
>
> A. *In failing* to provide Robert Kath with a reasonably safe place within which to work.

(Emphasis added). Burlington contends the phrase "in failing," would lead the jury to believe that Burlington did in fact *fail* "to provide Robert Kath with a reasonably safe place within which to work," causing, in essence, a directed verdict in Kath's favor. Burlington had submitted several of its own special verdict interrogatories, one of which read:

> Did the defendant *negligently fail* to provide Robert L. Kath with a reasonably safe workplace between 1942 and 1984?

(Emphasis added). Because the trial court rejected this requested interrogatory, Burlington claims reversible error.

■ The general rule is that parties are entitled to have all issues of fact submitted to the jury except those which are waived. *Wormsbecker v. Donovan Construction Co.*, 247 Minn. 32, 47–48, 76 N.W.2d 643, 653 (1956). Minn.R.Civ.P. 49.-01(a). Only those issues raised by the pleadings and the evidence and important to the judgment to be rendered must be submitted to the jury. *Id.*

Burlington argues that whether it failed to act is a fact issue separate from whether such a failure constituted negligence and that both these issues were not properly submitted to the jury. Kath responds that, even assuming error, Burlington waived its right to jury trial of that issue by not expressly objecting to the form of the special verdict during trial.

We are faced with the question of whether Burlington properly preserved for appellate review the issue of the alleged errors and omissions in the jury instructions and the special verdict form. We note that, at trial, Burlington voiced no objections to the special verdict questions. The court noted that "[o]nly after the verdict had been returned has the unsuccessful litigant fashioned an argument challenging the form of the verdict."

■ Burlington appears to have waived its right to jury trial of those questions by failing to object until its motion for a new trial. *See Germann v. F.L. Smithe Machine Co.*, 381 N.W.2d 503, 509–10 (Minn. Ct.App.1986). It is well established that a failure to object to a special verdict form prior to its submission to the jury constitutes a waiver of a party's right to object on appeal. *Thielbar v. Juenke*, 291 Minn. 129, 137, 189 N.W.2d 493, 498 (1971).

Although this court has held that failure to raise specific objections to a special verdict form prior to submission to the jury is not waiver of any "inconsistencies that *thereafter* develop in the verdict," *Continental Insurance Co. v. Loctite Corp.*, 352 N.W.2d 460, 463 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Nov. 8, 1984) (emphasis added), here the jury responded affirmatively to all liability questions and no inconsistency resulted.

Burlington, however, asserts that it did preserve an objection by virtue of an understanding reached between the trial court and counsel that to the extent that any of the requested instructions were not given, Burlington's objections would be "well and timely preserved for appellate purposes," thus exempting it from its general duty to specifically object under Rule 49.01 and *Wormsbecker.*

■ Burlington claims that by requesting its own interrogatories and being denied by the trial court, it preserved this question for appellate review. We disagree. Exceptions to giving or refusing instructions must be expressly made during trial and cannot be reserved by merely assigning them as grounds for new trial based upon some sort of understanding or assumption. *See generally Cowing v. Cowing*, 161 Minn. 533, 201 N.W. 936 (1925); *see also Fulton v. Chicago, Rock Island & Pacific Railroad Co.*, 481 F.2d 326, 338–39 (8th Cir.1973).

■ Similarly, the refusal of the trial court to give all of Burlington's proposed jury instructions did not constitute reversible error as no specific objections were voiced at trial. *See, e.g., DeMarais v. North Star Mutual Insurance Co.,* 405 N.W.2d 507, 509 (Minn.Ct.App.1987) (to preserve evidentiary rulings and jury instructions for appellate review, counsel must make timely objections and move for new trial).

All that is required to uphold the verdict as submitted, is that the charge as a whole conveyed to the jury a clear and correct understanding of the law. *Smith v. Kahler Corp., Inc.,* 297 Minn. 272, 282, 211 N.W.2d 146, 153 (1973).

To assure the jury had a clear and correct understanding of the law, the court included an instruction after the impanelling of the jury, as follows:

> Now, it's going to be your duty to find from the evidence what the facts in this case are. You and you alone, are the judges of the facts. Then you are going to have to apply the law, as I give it to you, to the facts as you find them.

Counsel for Burlington reminded the jury of their role as fact finders at various points during the trial, including during closing argument:

> As you go down that list on the jury verdict form, please keep in mind that every one of those requires negligence— not just that the railroad failed to test, not just that the railroad didn't warn him. * * *. So, please, as you see that form, don't think that all you're deciding is whether or not that happened. Please keep in mind that it is: they have to prove negligence. * * *.

■ Finally, we agree with the trial court that whether Burlington "negligently failed" to act or was "negligent * * * in failing" to act are substantially similar questions. The phrase "negligent in failing" has been used without error in special verdict questions which have come before the supreme court. *See e.g. Kinikin v. Heupel,* 305 N.W.2d 589, 594 (Minn.1981). A general charge with special interrogatories similar to the one used in the instant special verdict form was recommended in *Page v. St. Louis Southwestern Railway Co.,* 349 F.2d 820, 824–25 n. 12 (5th Cir. 1965). Thus, the phrasing of the special verdict form did not detract from the trial court's charge as a whole under *Kahler. See also Pogalz v. Miller,* 290 Minn. 411, 188 N.W.2d 877 (1971).

■ Burlington next attacks special verdict questions 9 and 10 which ask respectively, "Did the defendant violate the Boiler Inspection Act?" and, if so, "Was Robert Kath's illness and death caused in whole or in part from a violation of the Boiler Inspection Act?" Burlington contends that the trial court failed to define what conduct was allegedly in violation of the act.

However, this is not the function of the court. Here, the trial court clearly charged the jury that they were to determine the facts, and then apply the statute, if relevant to the facts so determined. In addition, it read the statute to the jury, which is proper, *O'Neill v. Minneapolis Street Railway Co.,* 213 Minn. 514, 523–24, 7 N.W.2d 665, 670 (1942), and does not constitute reversible error. *Templin v. Crestliner, Inc.,* 263 Minn. 149, 151–52, 116 N.W.2d 178, 181 (1962).

■ Burlington also took issue with the submission of special verdict question 11G which asked if Burlington was negligent in failing "to periodically test and examine Robert Kath to determine if he was subject to any ill effects of his exposure to asbestos-containing products?"

Burlington claims that examination and testing of Kath would have had "no causative or curative impact" on his mesothelioma and resulting death. However, there was testimony that new chemotherapy treatments might arrest mesothelioma or at least prolong life expectancy. Consequently, the trial court did not err in submitting this question. *See Wright v. Farmers Co-op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir.1980).

■ 2. Minnesota prohibits juries from reaching a "quotient" damage verdict by agreeing in advance to be bound by the

average of each juror's damage estimates. *Hennepin County v. Shasky*, 289 Minn. 44, 51, 182 N.W.2d 431, 436 (1970). The trial court refused to give a requested instruction regarding such quotient verdicts. Burlington now assigns this as prejudicial error because the jury allegedly averaged damage estimates during its deliberations.

■ First of all, the record does not indicate that Burlington made any specific objection prior to its motion for a new trial. Moreover, there are no Minnesota cases which mandate the giving of a quotient verdict instruction. Such an instruction is not found in 4 Minnesota Practice, Civ. Jig. (3d ed. 1986), nor in E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions, (4th ed. 1987). It has been expressly held that it is in the trial court's discretion to refuse a quotient verdict instruction. *Dehn v. Otter Tail Power Co.*, 251 N.W.2d 404, 416 (N.D.1977).

We conclude the alleged error is not a fundamental one, such that even without timely objection, a new trial is required. *See*, Minn.R.Civ.P. 51; *Pomije v. Scheiber*, 371 N.W.2d 596, 601 (Minn.Ct.App.1985).

3. The prejudice to which Burlington refers is supposed to be evident in the following remarks of one of the jurors to whom Burlington's counsel spoke after trial. On June 5, 1988, four days after verdict, one of the jurors telephoned Burlington's counsel at his home informing him that the pain and suffering damage award was reached by the other five jurors each submitting a number, which was then averaged to produce the amount of damages awarded. She also stated that the other jurors would not allow her number to count in the average since she voted "no" on the liability questions. Burlington's counsel chose not to inquire further with this juror or other jurors regarding such activity but instead filed an affidavit with a motion for a *Schwartz* hearing on June 16, 1988, summarizing the telephone conference with the juror.

The standard of review for a denial of a party's motion for a *Schwartz* hearing is the abuse of discretion test. *Zimmerman v. Witte Transportation Co.*, 259 N.W.2d 260, 262 (Minn.1977). The trial court denied Burlington's motion for a *Schwartz* hearing, stating:

Although a so-called *Schwartz* hearing should be liberally granted * * * * it is not every suspicion that should trigger the process. No substantial showing has been made of the likelihood or possibility of misconduct that would taint this verdict.

■ Kath contends that Burlington waived any right to a *Schwartz* hearing because its motion was untimely. There is little authority to guide us on the issue of waiver and timeliness. Minn.R.Crim.P. 26.-03, subd. 19(6) codifies for criminal cases the procedures outlined by the supreme court in *Schwartz* for civil cases. *State v. Larson*, 281 N.W.2d 481, 484 (Minn.1979). These procedures require a defendant to move the trial court immediately for a summary hearing if he has reason to believe jury misconduct has occurred. *State v. Butzin*, 404 N.W.2d 819, 828 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. June 9, 1987).

In *Butzin*, a short delay of five calendar days did not amount to a waiver. *Id.* at 828. Here the delay was only five to six days more than that in *Butzin*. The motion here does not appear so untimely as to constitute a waiver on Burlington's part.

■ Regardless of procedural insufficiencies, Burlington offers no persuasive prima facie evidence that the jurors agreed in advance to enter into a quotient verdict. *See Larson*, 281 N.W.2d at 484. A mere averaging of damages and refusal to include one juror's damage estimate, absent a showing of an agreement in advance to use an averaging method and be bound by it, does not constitute juror misconduct. *See Reick v. Great Northern Railway Co.*, 129 Minn. 14, 17–18, 151 N.W. 408, 409–10 (1915); *see also Larson v. Wisconsin Railway, Light & Power Co.*, 138 Minn. 158, 162–63, 164 N.W. 666, 668 (1917).

■ 4. Burlington contends that the jury's award of damages for pecuniary loss was not supported by the evidence. The jury awarded Eileen Kath $400,000 as fair

and adequate compensation for the pecuniary loss she sustained as a result of Robert Kath's death. There is sufficient evidence in the record to support the jury's award, including the decedent's entitlement to pension benefits, his future earning potential, the services he customarily contributed to his wife, and his life expectancy.

Where the trial court, having heard the testimony and observed the parties and witnesses, has passed upon the award and has allowed it to stand, an appellate court will not reverse absent a clear abuse of discretion. *Hake v. Soo Line Railway Co.*, 258 N.W.2d 576, 582 (Minn.1977). Given all the evidence presented on pecuniary loss, the trial court did not clearly abuse its discretion in denying Burlington's motion on damages. *See Kennedy v. Caudell*, 277 Minn. 35, 151 N.W.2d 407 (1967).

■ 5. The trial court admitted four documents known as the Alton Railroad documents, containing information concerning asbestos hazards. Three of the documents bear dates in the 1930's. A fourth document (the "revised recommendation") bears no date, but was found in a file containing other documents from the same era. The trial court found that all four documents were properly authenticated and relevant. Minn.R.Evid. 901(a). It further found they qualified as admissible hearsay under Rules 803(16) and 804(b)(5).

■ The prerequisites to authentication as an ancient document under Rule 901(b)(8) were met. Burlington's complaint was that Kath failed to establish the "revised recommendation" was at least 20 years old and thus self-authenticating. However, although that particular document had no date on it, "the physical appearance of the proffered evidence," or even the "contents of the material itself together with the surrounding circumstances" can establish the age requirement for admission under the rule. 5 J. Weinstein, Weinstein's Evidence ¶ 901(b)(8)[01] (1988). There was sufficient authentication and Burlington's objections were thus properly overruled under Rule 901.

Next, the documents are clearly relevant. One of Burlington's defenses was that the hazards of asbestos were not "knowable" or foreseeable at the time its predecessor was operating. A fundamental aspect of this negligence claim was what the railroad reasonably should have known at the relevant time period about the dangers of exposure to asbestos in their workplaces. The Alton documents illustrate the state of knowledge of numerous other railroads (if not that of Burlington's predecessor) during the 1930's and thus are relevant to the appropriate standard of care. *See, e.g., Fulton*, 481 F.2d at 337 (evidence of precautions taken by nonparty railroad companies held relevant to negligence standard of care of railroad tortfeasor). Accordingly, the trial court did not abuse its discretion in admitting these documents.

## DECISION

Affirmed.