COPE, Judge
(dissenting).
This is an asbestosis case. The question is whether, during the period 1945-63, the Florida East Coast Railway (FEC) knew, or should have known, that exposing employees to asbestos dust in the workplace created a risk that they would contract asbestosis, a serious, progressive, and incurable disease.
The plaintiff introduced ample evidence that the FEC should have known just that. By holding to the contrary, the majority opinion views the record in the light most favorable to the wrong party.
I.
Plaintiff John W. Osborne brought this lawsuit against the FEC under the Federal Employer’s Liability Act (FELA) alleging that he has asbestosis resulting in serious breathing impairment. From a verdict in favor of the plaintiff, FEC has appealed. Plaintiff was employed by FEC as an electrician from 1945 to 1963.[1] In that era, the FEC used steam locomotives. The locomotive boilers and the steam lines which ran under the railroad cars were insulated with asbestos. Plaintiff worked in the shops where the engines and railroad cars were repaired. In order to repair boilers or steam lines, workers removed the asbestos insulation, resulting in the creation of clouds of asbestos dust. While working in those shops, plaintiff inhaled the asbestos dust.
Under the FELA:
Every common carrier by railroad while engaging in commerce between any of the several States or Territories, ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment....
45 U.S.C. § 51.
“[Njegligence, within the meaning of the Federal Employers’ Liability Act, attached if respondent [railroad] ‘knew, or by the exercise of due care should have known,’ that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees.” Urie v. Thompson, 337 U.S. 163, 178, 69 S.Ct. 1018, 1028, 93 L.Ed. 1282 (1949)(emphasis added; citations omitted). In Urie, the Supreme Court held that a railroad worker may sue his railroad employer for negligence in exposing him to silica dust, resulting in silicosis. Id. at 187, 69 S.Ct. at 1033. Further, under the FELA, the employer railroad has liability if “the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.” Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). See also Baltimore and Ohio R.R. Co. v. *726 Taylor, 589 N.E.2d 267, 271 (Ind.Ct.App.1992).
II.
Plaintiff called as an expert witness Dr. David Ozonoff, a physician who is professor of public health and chairman of the Department of Environmental Health at Boston University.[2] Dr. Ozonoff traced the development of the medical and scientific knowledge that asbestos could cause disease. He summarized the published literature, which increased greatly in volume in the 1920’s. It was his opinion that by 1930 “it was generally recognized by the medical profession that breathing asbestos dust could cause a serious chronic lung disease, often fatal, which was called asbestosis.” [R. 278-79]. By 1965 the published literature had reached 726 articles. [R. 288],
Dr. Ozonoff testified that “in the 1930’s the subject of dust diseases, that is, diseases of the lung that you get from breathing dust, was a very frequent and perhaps one of the most common topics found in the medical journals. There were many, many silicosis cases.... There were many asbestos cases described in the literature. The medical journals were full of these cases.” [R. 280].
Dr. Ozonoff was asked about reports generated by the Association of American Railroads (AAR), the major railroad trade association. The AAR had a Medical and Surgical Section. Its 1935 proceedings contain the report of the Committee on Disability and Rehabilitation, which states in part:
Pneumoconiosis
Bernardo Romazzini in 1717 published a classical book on Occupational Diseases and brought out in detail, that 'pulmonary disorders were especially prevalent in employees engaged in dusty occupations. These conditions at present are being brought more and more to the attention of the-industrial surgeon for systematic studies.
Pneumoconiosis (pneumon-lung; konis-dust) is a condition that may be caused by any kind of dust entering the lung; but we as railroad surgeons are undoubtedly more interested in silicosis and asbestosis than in the other types.
Silicosis is caused by breathing free silica into the lungs; asbestosis is caused by breathing fine fibers of asbestos which consists of magnesium calcium silicate. Asbestosis is not a common condition but it causes extensive pulmonary fibrosis and takes on a more rapid course than does silicosis. Anthrocosis, which is due to coal dust, and siderosis, due to iron dust, are not as serious in causing complications as the other two just mentioned. These fine dust particles which produce these irrita-tive lung conditions are very minute and microscopic in size.
Silicosis, the most common dust disease and which is brought to the attention of the railroad surgeon the most frequently, in general develops very slowly. However, this disease takes from ten to twelve years before the changes in the lung are sufficient to produce clinical findings. The most severe types are found in eases after exposure of from 32 to 42 years. There are, however, cases called “Acute Silicosis” that have been known to develop after exposure of from four months to two years. The acute eases are found in individuals that are exposed to air containing silica which is mixed with free alkali as is found in powder plants where scouring powder is manufactured.
It should be understood that silica is found in the normal lung, but excessive amounts of silica produce connective tissue and this predisposes the individual to tuberculosis. There are many cases of tuberculosis that are not associated with silicosis but are diagnosed as silicosis. This is the miliary type of tuberculosis.
[[Image here]]
... In dealing with employees on entrance to service our suggestions would be:
(1) For the physician to take a complete history and make a careful physical examination.
(2) To take an X-ray film of the chest for lung tissue for diagnosis and future record.
*727 In old employees with a history of working in dust and having the classical clinical symptoms we suggest:
(1) To make a change in his occupation.
(2) To take an X-ray of his chest for lung tissue.

In the way of prevention it becomes necessary

(1) To educate all concerned.
(2) Get rid of dust.
(3) Sprinkle the working area with water.
(4) Have employees wear inhalers.
(5) Have frequent analysis made of the dust content of the air at different times during the working hours.
Proceedings of the Fifteenth Annual Meeting of the Association of American Railroads Medical and Surgical Section 89-90 (1935) (emphasis added).
The introduction to the report said, “In a measure this report is somewhat in the nature of a recapitulation as well as one to lay emphasis on the important matters that have been discussed in past years.” Id. at 86. In further remarks, the acting chairman noted, “Pneumoconiosis, as we discussed it in the last meeting, is of increasing importance.” Id. at 95. Asbestos was part of the larger problem of dust-caused lung disorders.
Dr. Ozonoff opined that the 1935 proceedings “mirrored or reflected what the medical literature was showing at the same time. They talk about dust diseases and they include asbestosis specifically. They discussed preventive measures. They discussed doing dust counts.” [R. 292], “What the transactions of the medical and surgical section show is that this material was disseminated specifically to medical people within the railroad industry as well. Now, we would have surmised that anyway. They could have known it by looking at the regular medical literature, but here is a specific industry literature which explicitly states that knowledge.” [R. 292-93]. Dr. Ozonoffs opinion was that the most important step was to educate workers regarding the risk associated with asbestos. [R. 302]. Upon understanding the risks, the worker would be more likely to take precautions. [Id].[3]
Plaintiff also introduced the so-called Alton Railroad documents. These documents reflect meetings of railroads, operating in Illinois in 1936 and 1937 which, in response to legislation in that state, met to discuss the use and effect of locomotive boiler asbestos insulation. The Alton Railroad studies were the subject of further discussion in the 1937 meeting of the Medical and Surgical Section of the Association of American Railroads.[4] The Alton Railroad documents are consistent with the information set forth above in the 1935 proceedings of the Medical and Surgical Section.[5]
In sum, it was Dr. Ozonoffs expert opinion that by 1930 it was well known and generally accepted in the medical field that asbestos exposure caused asbestosis. This and other dust-caused diseases were the focus of a great deal of attention in the 1920’s and 1930’s. This was well known within the field of industrial hygiene. The AAR and Alton Railroad documents simply confirmed what was the general understanding of the asbestos risk as of the 1930’s — which was, of course, long before the plaintiff began his employment with the FEC in 1945.
III.
The FEC claims that there is no evidence “showing that FEC had any reason to know *728 of the dangers posed by asbestos during the period when OSBORNE was allegedly exposed.” Initial brief at 16. In other words, the FEC claims that from 1945 through 1963, it did not have any reason to know that exposure to asbestos dust can cause asbestosis.
In an effort to support this position, the FEC says that Dr. Ozonoffs testimony must be disregarded. In doing so, the FEC repeatedly, takes Dr. Ozonoffs testimony out of context.
First, the FEC claims that the various medical and scientific articles were known to the medical community but not to the railroad. That is a specious argument. To learn about health hazards in the workplace, obviously the railroad had to consult the medical community, and more particularly the information which was available in the fields of industrial hygiene and public health. That is exactly the field to which the various articles were addressed that Dr. Ozonoff testified about. In essence the FEC is saying that it could ignore any health risk unless the company president read about it in Life Magazine. That cannot be so. All railroads in this period, including the FEC, employed medical professionals. Certainly they had an obligation to consult those with appropriate expertise. — industrial hygienists, and others — regarding workplace health risks.
Next, the FEC criticizes Dr. Ozonoff for saying that the abundant literature about asbestos risk was widely available in medical libraries in the 1930’s. FEC argues that this testimony means that the asbestos literature was only known to isolated research scientists, and was not generally knowable or discoverable by railroad physicians or industrial hygienists. But Dr. Ozonoffs testimony was to the contrary. He testified that the asbestos and other dust-related risks were a matter of general knowledge and great attention in the 1930’s. “The industrial medical journals were full of this material. You don’t have to read 726 articles. Yoú probably have to read one.” [R. 343]. ■ His point was that for those whose business it was to consider the workplace risks of their employees, the asbestos and other dust-related risks were widely known in the field of industrial hygiene beginning in the 1930’s, and abundant literature was available to consult about the problem.
With regard to the AAR documents, the FEC argues that those are irrelevant because the record does not establish whether the FEC was a member of the AAR during 1935-37. The FEC correctly states that it was not represented in the Medical and Surgical Section. The record is also clear that the FEC did not participate in the Alton Railroad proceedings. The FEC argues, therefore, that it cannot be charged with actual knowledge of the above proceedings and documents.
The inquiry does not end there, however. As already stated, the FEC has liability under'the FELA not only for what it actually knew, but also what it should have known in the exercise of due diligence. Urie v. Thompson, 337 U.S. at 178, 69 S.Ct. at 1028-29. The testimony of Dr. Ozonoff, as well as the AAR and Alton Railroad documents, demonstrate the level of knowledge which existed throughout the industry from 1935 onward. Failure to pay attention does not get the FEC off the hook.
It has been held, in an asbestos case brought under the FELA, that the Alton Railroad documents are admissible on the question of what the defendant railroad should have known:
The trial court admitted four documents known as the Alton Railroad documents, containing information concerning asbestos hazards. Three of the documents bear dates in the 1930’s. A fourth document (the “revised recommendation”) bears no date, but was found in a file containing other documents from the same era....
[[Image here]]
[T]he documents are clearly relevant. One of Burlington’s defenses was that the hazards of asbestos were not “knowable” or foreseeable at the time its predecessor was operating. A fundamental aspect of this negligence claim was what the railroad reasonably should have known at the relevant time period about the dangers of exposure to asbestos in their ivorkplaces. The Alton documents illustrate the state of knowledge of numerous other railroads (if not that of Burlington’s predecessor) dur *729 ing the 1930’s and thus are relevant to the appropriate standard of care.
Kath v. Burlington N.R.R. Co., 441 N.W.2d 569, 575 (Minn.Ct.App.1989) (emphasis added; citation omitted).
The same logic applies to the proceedings of the Medical and Surgical Section. The 1935 report quoted above was submitted by a committee consisting of representatives from six railroads from throughout the United States. The report states that it is a recapitulation of important matters previously discussed. It was addressed to representatives of forty-five railroads operating throughout the United States. The Alton Railroad documents likewise reveal the state of knowledge of numerous railroads in that era. Kath, 441 N.W.2d at 575. These issues were revisited by the Medical and Surgical Section in 1937.
In sum, Dr. Ozonoffs testimony, the AAR documents, and the Alton Railroad documents are relevant and admissible on the question of what the FEC should have known prior to, and during, the time of plaintiffs employment.[6] They provide a proper basis for the jury to find that the FEC should have known of the asbestosis risk and should have taken precautions to guard against it.[7]

. There was a gap in service, which is immaterial here.

. Dr. Ozonoff is not a professional witness and rarely testifies in asbestos litigation.

. The Committee which prepared the 1935 report had representatives of six railroads. The Medical and Surgical Section meeting was attended by representatives of forty-five railroads.

. See “Occupational Diseases — the Illinois Law;'' in Association of American Railroads, Proceedings of the Seventeenth Annual Meeting of the Medical and Surgical Section 17 (1937). This report reviewed the Illinois statute. The reporting physician went on to say, "Silica, asbestos, and lead are the principal substances generating toxic dusts to which railway employees may be exposed.... Silicosis and asbestosis are strictly dust diseases, and can. be contracted only by breathing silica or asbestos dust.” Id. at 20, 22. The reporting physician discussed control techniques, including ventilation, substitution of wet grinding for dry grinding, and personal protection through such devices as respirators. Id. at 21-22.

.Forty-six railroads participated in the 1937 meeting of the Medical and Surgical Section.

. By 1949, the United States Supreme Court said in Urie, " 'It is a matter of common knowledge that it is injurious to the lungs and dangerous to health to work in silica dust, a fact which defendant [railroad] was bound to know.' " 337 U.S. at 180, 69 S.Ct. at 1029 (footnote omitted). The silicosis risk and asbestosis risk were discussed together in the proceedings of the Medical and Surgical Section quoted above, in the Alton Railroad documents and the 1937 proceedings of the Medical and Surgical Section.

. At trial the FEC argued that it did take reasonable steps. The reasonableness and adequacy of those steps was a question for the jury.